[No. B162084. Second Dist., Div. Eight. Feb. 14, 2003.]

STEPHEN NICOLOPULOS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOUIS W. BOURGEOIS III, Real Party in Interest.

**COUNSEL**

Nemecek & Cole, Frank W. Nemecek and David B. Owen for Petitioner.

No appearance for Respondent.

Avila & Putnam, Vernon L. Putnam and Soby M. Mathews for Real Party in Interest.

## Opinion

## BOLAND, J.—

### Summary

Petitioner Stephen Nicolopulos sought a writ of mandate after the trial court denied his application for a temporary restraining order to prevent the foreclosure sale of his property under a deed of trust held by Louis W. Bourgeois III. Nicolopulos contends Bourgeois has no right to foreclose on the property because the lien of his deed of trust (a) was extinguished under Civil Code section 2911 when the statute of limitations ran on the underlying promissory note, or (b) expired under Civil Code section 882.020, subdivision (a)(1), 10 years after May 28, 1991, the maturity date of the promissory note.

We conclude Nicolopulos is mistaken on both counts, and has failed to demonstrate the applicability of any equitable principle that would bar Bourgeois from exercising the power of sale in his deed of trust. Because the trial court correctly denied Nicolopulos's application, we deny Nicolopulos's petition for a writ of mandate.

### Factual and Procedural Background

Stephen Nicolopulos and Tom Phillips jointly purchased real property in Lawndale in May 1988. Nicolopulos and Phillips entered into a first mortgage with Citibank, and also signed a promissory note to Allan Creighton for $15,000. The promissory note called for monthly payments of interest and a final payment of principal and accrued interest on May 28, 1991. The note was secured by a deed of trust executed by Nicolopulos and Phillips. The deed of trust, which was notarized and recorded, did not state the maturity date of the promissory note. No evidence indicated the note was ever recorded.

In April 1989, Phillips quitclaimed his interest in the property to Nicolopulos. In July 1990, Allan Creighton sold the promissory note to real party in interest Louis W. Bourgeois III. Nicolopulos asserts that in June 1995, he informed Bourgeois that he believed the note had been satisfied, and he made no further payments on the note.

In June 2002, more than 10 years after the maturity date of the note, and almost seven years after Nicolopulos stopped making payments, Bourgeois recorded a "Notice of Default and Election To Sell Under Deed of Trust" on

the property, thus commencing nonjudicial foreclosure proceedings. A fore-closure sale was scheduled for October 17, 2002.

On October 11, 2002, Nicolopulos filed a complaint for declaratory and injunctive relief, and an ex parte application for a temporary restraining order and an order to show cause for issuance of a preliminary injunction prohibiting foreclosure. His application alleged the underlying obligation giving rise to the note was fraudulent; his real estate brokers and loan broker participated in a scheme involving presentation of fraudulent loan packages to Citibank for the purchase of various properties; and Bourgeois was a coconspirator in the schemes and had pled guilty to some criminal charges.[1] Nicolopulos further argued the lien was extinguished under Civil Code section 2911, and also expired under Civil Code section 882.020.[2]

At the hearing on the same date, Bourgeois's counsel pointed out that Nicolopulos signed the note and deed of trust, and Bourgeois was not involved in the actions of Nicolopulos's real estate brokers and loan broker with respect to the purchase of the Nicolopulos property. Counsel asserted Bourgeois purchased the note two years later paying $13,500 for it, and the first deed of trust on the property was in default and Bourgeois paid $11,166.19 to cure the default in order to protect his interest.

The trial court indicated the maturity date of the note was not set forth in the deed of trust. The court stated it was not interested in evidence of criminal indictments or charges that were not proven, and it would give no weight to that evidence or to Nicolopulos's declaration about Bourgeois's guilty plea. The court expressed doubt about the application of Civil Code section 2911 to a deed of trust, inasmuch as the Legislature enacted Civil Code section 882.020 notwithstanding the existence of section 2911. Finally, the court denied the application, stating: "I don't understand how plaintiff could have been defrauded by a note and deed of trust that he signed. I don't find that there's any evidence that I can believe that there was a lack of

---

[1]Nicolopulos asserted Bourgeois "has pled guilty to criminal charges concerning this and similar types of transactions in which he has admittedly engaged," but there is no evidence, admissible or otherwise, that any such charges involved the purchase of the Nicolopulos property. Nicolopulos also submitted copies of informations and/or indictments filed against his real estate brokers and loan broker; these alleged a fraudulent scheme involving the purchase of various properties through false representations to Citibank that no part of the purchaser's down payment would be borrowed, overstatement of the borrower's income, and so on. None of these documents contain any allegations specifically referring to the Nicolopulos property.

[2]Nicolopulos's complaint and application further alleged no consideration was given for the note. In his reply to Bourgeois's return to the petition, however, Nicolopulos admits Allan Creighton provided financial assistance in the amount of $15,000 in connection with the purchase of the property.

consideration given with the deed of trust. The payee [Allan Creighton] has not alleged anywhere in the papers that I can see to be other than a innocent lender for value, and for those reasons the application is denied."

On October 15, 2002, Nicolopulos filed a petition for a peremptory writ, asking this court to (a) require the trial court to grant his application, and (b) enjoin Bourgeois from proceeding with the foreclosure sale on October 17, 2002, until the validity and enforceability of the lien was determined. The writ petition asserted the trial court should have enjoined the foreclosure sale based upon either Civil Code section 2911 or section 882.020. We issued an alternative writ, directing the trial court either to vacate its order and grant Nicolopulos's application or to show cause why a peremptory writ should not issue. In the event the trial court failed to vacate its order, the alternative writ directed the parties to address whether any equitable principle, including the doctrine of estoppel, barred Bourgeois from asserting that the 60-year time limit in section 882.020, subdivision (a)(2), applied to the enforcement of the deed of trust.

The trial court did not vacate its order, Bourgeois filed a return to the petition, and Nicolopulos filed a reply. We now conclude the trial court correctly denied Nicolopulos's application, and we deny the petition for a peremptory writ.

## DISCUSSION

 First, the lien of the deed of trust held by Bourgeois was not extinguished under Civil Code section 2911 and did not expire under Civil Code section 882.020.

 Civil Code section 2911, enacted in 1872, provides that a lien is extinguished by the lapse of time within which, under the Code of Civil Procedure, an action can be brought upon the principal obligation. However, the running of the statute of limitations does not extinguish a power of sale conferred on a trustee by a deed of trust. That is, while a civil action to foreclose a deed of trust may be barred under section 2911, nonjudicial foreclosure proceedings under a power of sale are not. (See *Flack v. Boland* (1938) 11 Cal.2d 103, 106 [77 P.2d 1090] [although "the statute of limitations does not run against the power of sale in a deed of trust [citations], the limitation of the statute does apply to the commencement of actions (sec. 335, Code Civ. Proc.), including actions for the foreclosure of mortgages"].)

Thus, prior to 1982, when the Legislature enacted Civil Code section 882.020, the power of sale under a deed of trust was never barred; it was said the power of sale "never outlaws." (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707 [33 Cal.Rptr.2d 288] [citing cases].) This rule "was based on the equitable principle that a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." (*Ibid.*) In 1982, the Legislature enacted the Marketable Record Title Act, including section 882.020, "in order to make real property more freely alienable and marketable." (*Miller v. Provost, supra,* 26 Cal.App.4th at p. 1707; Civ. Code, § 880.020.) The statute "effectively abrogates the 'never outlaws' rule by limiting the time for exercising the power of sale under a deed of trust." (*Miller v. Provost, supra,* 26 Cal.App.4th at p. 1708.) ▇▇ Under section 882.020, the lien of a deed of trust expires, and is not enforceable by a power of sale, 10 years after the final maturity date of the obligation if that date "is ascertainable from the record," or 60 years after recordation of the deed "[i]f the final maturity date or the last date fixed for payment of the debt . . . is not ascertainable from the record . . . ." (Civ. Code, § 882.020, subd. (a)(1) & (2).)[3]

Accordingly, unless the maturity date of Nicolopulos's promissory note "is ascertainable from the record," Bourgeois's power of sale under the deed of trust does not expire until 60 years after its recordation. The maturity date of the note is not ascertainable from the record; no evidence indicates the note was ever recorded, and the deed of trust does not state the maturity date of the note. As the court held in *Miller v. Provost, supra,* 26 Cal.App.4th 1703, the term "ascertainable from the record" does not include the contents of unrecorded documents referred to in a recorded document. After citing well-settled principles of statutory construction and legislative intent, the court concluded: "The phrase 'ascertainable from the record' in section 882.020 can only mean what it says; i.e., the recorded document must contain the requisite information. . . . [T]he purpose of the statute is not merely to give notice that the property is encumbered, but to provide a specific date for the expiration of the encumbrance." (*Miller v. Provost,*

---

[3]Section 882.020, subdivision (a), states in part:

"(a) Unless the lien of a . . . deed of trust . . . has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by . . . power of sale exercised . . . after . . . :

"(1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record, 10 years after that date.

"(2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the record, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded." (Civ. Code, § 882.020, subd. (a).)

*supra*, 26 Cal.App.4th at p. 1709.) We see no basis upon which to disagree with the conclusion in *Miller*. Thus, the lien of the deed of trust Bourgeois holds does not expire until 60 years after its July 1988 recordation.

■ Second, while the Marketable Record Title Act expressly states it does not limit application of the principles of waiver, estoppel, laches and other equitable principles (Civ. Code, § 880.030), Nicolopulos offers no cogent basis upon which a court may conclude that Bourgeois should be barred on equitable grounds from relying on the 60-year time limit. In his return, Nicolopulos argues the doctrines of estoppel and laches prevent Bourgeois from relying on the 60-year limit. However, it is clear he cannot establish the requisite elements of either defense.

■ Estoppel is applicable "where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." (*Brookview Condominium Owners' Assn. v. Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 512 [267 Cal.Rptr. 76].) To establish a defense of equitable estoppel, four elements must ordinarily be proved: " '(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.' . . ." (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59 [35 Cal.Rptr.2d 515], citation omitted.)

■ Nicolopulos asserts Bourgeois should be estopped from relying on the 60-year limitation period, because Bourgeois could have enforced his rights in 1995 when Nicolopulos stopped paying on the promissory note; he (Nicolopulos) made substantial improvements to the property thereafter and did not know Bourgeois could delay making his claim for up to 60 years. Moreover, Nicolopulos claims prejudice because he no longer has any records and, as a result, cannot prove the entire obligation was satisfied in 1995 and cannot challenge the validity of the assignment from Creighton to Bourgeois because Creighton is dead. None of this suffices to prove estoppel, which does not exist in the absence of any one of its elements. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 177, p. 859 [citing cases].) No conduct or statement by Bourgeois occurred upon which Nicolopulos relied; Bourgeois simply did not act. While an estoppel may arise from silence, there must be a duty to speak (*id.*, § 179 at p. 861 [citing cases]), and we discern none. Moreover, Nicolopulos was not "ignorant of the true state of facts." He was aware of all facts known by Bourgeois; it was only the law he misconstrued. Accordingly, no basis exists to estop Bourgeois from relying on the 60-year limitation period in Civil Code section 882.020.

Nicolopulos also argues the equitable doctrine of laches prevents Bourgeois from asserting the 60-year limitation period. We entertain some doubt that the doctrine of laches is applicable in these circumstances. ■ "Laches is an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable." (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439 [38 Cal.Rptr.2d 521].) ■ It is available as a defense to a lawsuit by a plaintiff seeking equitable relief. Bourgeois is not seeking equitable relief, or asserting an equitable right. Indeed, he has filed no lawsuit. He is merely exercising the power of sale in his deed of trust in a nonjudicial foreclosure, and the law is clear his right to do so has not expired.[4] In any case, it is difficult to discern any particular prejudice or inequity to Nicolopulos. He signed and benefited from the note, signed the deed of trust recorded against his property, and did not repay the obligation.[5] He misjudged his legal position, but that circumstance cannot be blamed upon Bourgeois.

In sum, the lien of Bourgeois's deed of trust was not extinguished under Civil Code section 2911, the lien did not expire under Civil Code section 882.020, and Nicolopulos failed to demonstrate the applicability of any equitable principle that would bar Bourgeois from exercising the power of sale granted in the deed of trust. Accordingly, the petition for a writ of mandate must be denied.

### DISPOSITION

Petitioner's request for a peremptory writ of mandate is denied, and this court's order of October 16, 2002 is vacated insofar as it required the real party in interest to cease the exercise of the power of sale in the deed of trust recorded on July 26, 1988, as instrument No. 88-1168468 in the official

---

[4] See also *Welch v. Security-First Nat. Bk. of L.A.* (1943) 61 Cal.App.2d 632, 635 [143 P.2d 770], in which plaintiff sued to remove a cloud on title created by the lien of a trust deed. The lawsuit predated Civil Code section 882.020, so the rule of law was that a power of sale was "never outlawed by the lapse of time alone." (*Welch*, at p. 635.) The court rejected as untenable plaintiff's assertion that, since more than eight years had elapsed while defendants took no action to protect their interest, defendants' claims based on the deed of trust were barred by laches.

[5] Nicolopulos's own evidence was that the total paid against the note between May 1988 and June 1995, when he decided to stop paying, was approximately $14,875. The $15,000 note called for interest of 13 percent per annum, and Nicolopulos recalls he paid about $175 per month. His current assertion that he is prejudiced, because he cannot prove the note was satisfied due to passage of time/lack of records, is mathematically less than persuasive. Similarly, his initial assertions that the note was executed "unbeknownst to" him, and that no consideration was given for the note, juxtaposed with his admission in the reply that "[Allan] Creighton provided financial assistance in the amount of $15,000" in connection with the purchase of the property, suggest the equities in this case are not one-sided.

records of Los Angeles County. Costs in this original proceeding are awarded to the real party in interest.

Cooper, P. J., and Rubin, J., concurred.