[No. B182875. Second Dist., Div. Seven. May 16, 2006.]

ANNA SLINTAK et al., Cross-complainants and Respondents, v. BUCKEYE RETIREMENT CO., L.L.C., LTD., Cross-defendant and Appellant.

**COUNSEL**

Brewer & Brewer and James R. Knoles for Cross-defendant and Appellant.

Gregory Grantham for Cross-complainants and Respondents.

OPINION

ZELON, J.—Appellant Buckeye Retirement Co., L.L.C., Ltd. (Buckeye), appeals from summary judgment entered on the cross-complaint of Anna Slintak and Bohumir Marik (collectively Marik) for quiet title and cancellation of a deed of trust held on property owned by Marik. The trial court held that Buckeye's right to foreclose on a deed of trust encumbering Marik's property had expired under the statute of limitations of the Marketable Record Title Act (MRTA) (Civ. Code, § 880.020 et seq.),[1] and that no exceptions or equitable tolling applied to the statute of limitations of the MRTA. We reverse on the ground the statute of limitations has not run due to the filing of lis pendens in separate, but related, litigation.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.  *Background Facts.*

On October 23, 1989, Redondo Blacksmith, Inc. (RBI),[2] as part of a plan to develop property in Fontana, California, gave Metro Bank (Metro) a trust deed (Metro Trust Deed) on real property located at 350 North Pacific Coast Highway in Redondo Beach, California (Redondo property). The Metro Trust Deed was intended to partially collateralize a loan (Juniper Note) Metro was making to Juniper Park Villa Investment, L.L.P. (Juniper), to purchase property in Fontana (Fontana property), and was additional collateral for the Juniper Note. The Metro Trust Deed was recorded on October 27, 1989, in the records of Los Angeles County. The Juniper Note was also secured by a trust deed on the Fontana property (Fontana Trust Deed). Juniper purchased the land in Fontana with the proceeds of the loan, but the property was not developed.

In 1992, RBI executed three promissory notes payable to Martin Slintak, Anna Slintak, and Jacobs Investments, and gave each of them trust deeds on the Redondo property. These notes are junior to the Juniper Note.

On May 15, 1992, Metro recorded a notice of default and election to sell on the Fontana property under the Fontana Trust Deed.[3] On October 21, 1992, Metro assigned the Juniper Note to MNSB Properties, Inc. (MNSB), a

---

[1] All statutory references herein, unless otherwise noted, are to the Civil Code.

[2] At the time, Marik was the president of RBI.

[3] The original October 25, 1990 due date of the Juniper Note was extended three times. The parties disputed the exact amount of the loan originally secured by the Metro Trust Deed. The Juniper Note was in the amount of $850,000, while the Metro Trust Deed secured a loan in the amount of $1.5 million.

wholly owned subsidiary of Metro, and the assignment of the Fontana Trust Deed was recorded on October 29, 1992. On October 22, 1992, MNSB submitted a credit bid at Metro's trustee's sale, and acquired title to the Fontana property.

On October 28, 1992, after the foreclosure of the Fontana Trust Deed, Metro recorded a notice of default on the Redondo property under the Metro Trust Deed (October 1992 Notice of Default). The October 1992 Notice of Default stated that the Juniper Note was "due on January 23, 1992." On October 21, 1992, Metro assigned the Metro Trust Deed to its wholly owned subsidiary, MNSB Properties, Inc.[4] On November 13, 1992, the Federal Deposit Insurance Corporation (FDIC) became Metro's receiver, and the scheduled trustee's sale of the Redondo property was not conducted.

In 1993, RBI conveyed the Redondo property to Bohumir Marik.

On July 16, 1993, Bohumir Marik commenced an action in the United States District Court in Missouri against the FDIC as receiver for Metro for cancellation of the Metro Trust Deed to halt the foreclosure of the Redondo property. Marik's complaint alleged that the $1.5 million Metro Trust Deed was invalid and it did not encumber the Redondo property. On November 21, 1995, Marik filed a lis pendens based on the Missouri federal action with the Los Angeles County Recorder. This action was later terminated.

In January 1996, Marik filed an action to quiet title in the Los Angeles County Superior Court against the FDIC. Marik alleged that the assignment of the Juniper Note to MNSB also transferred the Metro Trust Deed to MNSB; because MNSB was not in receivership, the FDIC never acquired any interest in either the Metro Trust Deed or the Juniper Note. The FDIC removed the action to the United States District Court for the Central District of California. In 1997, the district court agreed and found that the Metro Trust Deed was not an asset of the FDIC because the Juniper Note had been assigned to MNSB prior to Metro's receivership. The court dismissed the FDIC action, and because federal jurisdiction no longer existed, remanded the matter to state court. The state court refused to enter judgment because a final judgment had been entered in the district court, a ruling that was upheld on appeal.

On September 21, 1999, MNSB assigned its interest in the Juniper Note and Metro Trust Deed to the FDIC. In 1999, Marik commenced another quiet title action in the California state court against the FDIC and Juniper, and filed a lis pendens giving notice of the action with the Los Angeles County

---

[4] MNSB is located in Missouri.

Recorder. The action was removed to Missouri federal court, where it was dismissed for failure to exhaust administrative remedies in September 2000. That ruling was upheld on appeal in July 2001.

In May 2001, the FDIC sold the Juniper Note to Cadle Company (Cadle) and assigned the Metro Trust Deed to Cadle. On May 15, 2001, Cadle assigned the Juniper Note to Buckeye, and recorded the notice of assignment of the Metro Trust Deed on September 23, 2002.

On January 14, 2003, Buckeye commenced this action for judicial foreclosure and breach of contract. The record does not indicate a lis pendens was recorded. On April 30, 2003, Anna Slintak and her son Martin Slintak and Jacobs Investments filed a cross-complaint for quiet title and cancellation of deed of trust, naming Buckeye, RBI, and Marik, among others, as cross-defendants. On October 2, 2003, after defendants demurred to the complaint and two amended complaints, Buckeye dismissed the second amended complaint without prejudice. The cross-complaint remained pending.

On October 10, 2003, Buckeye recorded another notice of default and election to sell the Redondo property. On February 27, 2004, the trial court issued a preliminary injunction enjoining Buckeye's trustee's sale.

On April 14, 2004, pursuant to stipulation of the parties, cross-complainants amended their cross-complaint to change the parties to Marik and his wife Anna Slintak as cross-complainants, and Buckeye and Les Zieve as cross-defendants. Marik added claims for declaratory relief and injunctive relief and eliminated the claim for quiet title. In particular, the first amended cross-complaint alleged that any action to enforce the Metro Trust Deed was barred by the MRTA because the October 1992 Notice of Default stated the note was due and payable on January 23, 1992.

2. *Cross-complainants' Summary Judgment Motion and Buckeye's Motion for Reconsideration.*

Marik moved for summary judgment on the cross-complaint, contending the power of sale of the Metro Trust Deed had expired under section 882.020, part of the MRTA, because more than 10 years had elapsed from the due date of the Juniper Note as evidenced by the October 1992 Notice of Default in the record.[5] The recorded October 1992 Notice of Default stated that with respect

---

[5] Section 882.020 provides in relevant part that: "(a) Unless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property to secure a debt or other obligation has earlier expired pursuant to Section 2911, the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other

to the Juniper Note, "the remaining principal sum, accrued interest, default interest and late charges . . . became due January 23, 1992. . . ."[6]

Buckeye opposed on the grounds that the statute of limitations under the MRTA was equitably tolled by Marik's litigation activity in the federal court which prevented Buckeye from taking action to protect its rights under the Metro Trust Deed.

The trial court granted the motion on the grounds that the power of sale in the Metro Trust Deed had expired under the 10-year limit of MRTA, section 882.020, subdivision (a). The court noted that Buckeye did not dispute the note became due and payable on January 23, 1992; this due date was ascertainable from the record (Metro's notice of default); and Buckeye's notice of default, filed October 10, 2003, was filed more than 10 years after the due date of the note. The trial court rejected Buckeye's equitable tolling defenses, finding that equitable tolling was expressly excluded under the MRTA, citing section 882.030 and legislative comments thereto; furthermore, the court found that Buckeye had failed to file a notice of intent to preserve interest under section 882.020.[7]

Buckeye moved for relief pursuant to Code of Civil Procedure section 473 from the order granting summary judgment, asserting that it received Marik's improperly mailed reply brief in insufficient time to review it prior to the hearing, and the reply brief relied on additional statutory provisions. Buckeye also argued that the Metro Trust Deed was the only document that could be relied upon under the statutory terminology "ascertainable from the record," and, because it contained no due date for the obligation on the note, the 60-year statute of the MRTA applied. Finally, Buckeye contended that MRTA did not apply under sections 880.240, subdivision (b)[8] (MRTA inapplicable

---

means asserted after, the later of the following times: [¶] (1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record, 10 years after that date. [¶] (2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the record, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded."

[6] The motion also raised additional grounds not relevant to this appeal.

[7] Section 882.020 provides at subdivision (a)(3) that "[i]f a notice of intent to preserve the security interest is recorded within the time prescribed in paragraph (1) or (2) [10 years or 60 years], [the interest expires] 10 years after the date the notice is recorded."

[8] Section 880.240 provides that: "The following interests are not subject to expiration or expiration of record pursuant to this title: [¶] . . . [¶] (b) An interest of the United States or pursuant to federal law in real property that is not subjected by federal law to the recording requirements of the state and that has not terminated under federal law."

where an "interest of the United States" is involved), and 880.260[9] (MRTA inapplicable where an action and a lis pendens are filed). In support of its motion, Buckeye submitted copies of the two lis pendens recorded by Marik in connection with the federal litigation.

Marik's opposition asserted that Buckeye's motion was in fact a motion for reconsideration under Code of Civil Procedure section 1008, and that Buckeye had failed to provide a satisfactory explanation of why the evidence or legal argument had not been presented before. Marik further contended Buckeye's arguments were of no avail because section 880.260 did not provide for tolling of the statute; instead, it only applied where a judgment affecting the interest had been obtained, and no judgment was ever obtained in any of Marik's federal or state actions. Furthermore, Marik argued that the exception for interests of the United States did not apply because the interest in this case was subject to state foreclosure laws.

The trial court found that Buckeye's motion for relief was a disguised motion for reconsideration under Code of Civil Procedure section 1008, and that Buckeye had failed to present any explanation why the new evidence and argument was not presented at the summary judgment motion. On the merits, the trial court rejected Buckeye's arguments that the reply was not timely served and that "ascertainable from the record" could only refer to the trust deed. The trial court found that section 880.260 did not render the statutory limitations period inapplicable, but instead provided a mechanism by which an interest could be preserved by the filing of a lawsuit and a lis pendens within the statutory period. The trial court also found section 880.240 did not apply because Buckeye had provided no support for its argument that the statutory language "an interest of the United States" also applied to an agency of the federal government.

The court entered judgment on the cross-complaint in favor of Marik.

## DISCUSSION

On appeal, Buckeye raises four defenses to the application of the MRTA's 10-year limitations period to the Metro Trust Deed.[10] First, it contends that

---

[9] Section 880.260 provides that: "An interest in real property, as specified in this title, does not expire or expire of record and is not unenforceable pursuant to this title at the time prescribed in this title if within the time an action is commenced to enforce, establish, clear title to, or otherwise affect the interest and a notice of the pendency of the action is recorded as provided by law. For the purpose of this section, action includes special proceeding and arbitration proceeding."

[10] Two of these arguments were raised in Buckeye's Code of Civil Procedure section 473 motion; the trial court addressed them on the merits in ruling on Buckeye's motion. Because

the due date of the Juniper Note was not "ascertainable from the record" because the due date is not stated in the Metro Trust Deed. Second, it contends that the trial court failed to apply the exception of section 880.240, subdivision (b) to the interest of the FDIC (MRTA does not apply where an interest is held by the United States). Third, it contends that under section 880.030, Marik is barred by waiver, estoppel, and laches, which have either abrogated or extended the limitations period. Lastly, Buckeye contends Marik's federal lawsuits and the two recorded lis pendens barred the applicability of the statute of limitations pursuant to section 880.260, or at the very least, tolled it during the pendency of the litigation.

As we explain, section 880.260 is ambiguous and specifies no outside time limit for expiration of the power of sale in a deed of trust once litigation is commenced and a lis pendens filed. Because an unlimited extension of the expiration date would be inconsistent with the other statutory provisions, we conclude that under section 880.260, the filing of a lis pendens within the initial 10-year statutory period should commence a new 10-year statute of limitations during which the power of sale remains valid. Here, because less than 10 years has elapsed from the filing of the last lis pendens, the power of sale in the Metro Trust Deed has not expired.

### A.  Standard of Review and Principles of Statutory Construction.

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (See also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action. . . ." (Code Civ. Proc., § 437c, subd. (p)(1); see also *Aguilar, supra,* 25 Cal.4th at p. 849.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850.) Where summary judgment has been granted, we review the trial court's decision de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

██  In interpreting statutory language, the first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and

the parties do not dispute the factual predicates of those arguments (including the filing of the two lis pendens) and they present pure questions of law, we address them on appeal.

commonsense meaning. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].) If there is no ambiguity in the statutory language, a court must presume that the Legislature meant what it said, and the plain meaning of the statute governs. (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) "An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) At all times, "[o]ur foremost task remains ascertainment of the legislative intent, including consideration of 'the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302, 306 [3 Cal.Rptr.3d 473].)

### B. *The Power of Sale in the Metro Trust Deed Has Not Expired.*

#### 1. *The 10-Year Statute of Limitations Applies Because the Due Date of the Obligation May Be Stated in a Document Other Than the Trust Deed.*

Prior to 1982 in California, the running of the statute of limitations on a note secured by a deed of trust barred any action on the note as well as judicial foreclosure. However, the power of sale under a trust deed had no statute of limitations; rather, the power of sale would "never outlaw." The rule was based upon the equitable rationale that the mortgagor should not be able to quiet title against his or her encumbered property without first paying the underlying debt. (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707 [33 Cal.Rptr.2d 288] (*Miller*).)

■ In 1982, the Legislature overturned the rule that the power of sale in a trust deed "never outlaws." The purpose of the MRTA was to make real property more freely alienable and marketable.[11] To that end, the Legislature

---

[11] Section 880.020 provides that: "(a) The Legislature declares as public policy that: [¶] (1) Real property is a basic resource of the people of the state and should be made freely alienable and marketable to the extent practicable in order to enable and encourage full use and development of the real property, including both surface and subsurface interests. [¶] (2) Interests in real property and defects in titles created at remote times, whether or not of record, often constitute unreasonable restraints on alienation and marketability of real property because the interests are no longer valid or have been abandoned or have otherwise become obsolete. [¶] (3) Such interests and defects produce litigation to clear and quiet titles, cause delays in real property title transactions, and hinder marketability of real property. [¶] (4) Real property title transactions should be possible with economy and expediency. The status and security of recorded

sought to simplify real estate transactions by enabling persons to determine the status and security of recorded titles from an examination of the record. (*Worthington v. Alcala* (1992) 10 Cal.App.4th 1404, 1409 [13 Cal.Rptr.2d 374].) The Legislature provided for two limitations periods, the 10-year period of section 882.020, subdivision (a)(1) where "the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record," and a 60-year period for all other trust deeds in section 882.020, subdivision (a)(2).

In *Miller, supra,* 26 Cal.App.4th at page 1709, the promissory note containing the maturity date was not recorded. Although the deed of trust itself had been, the due date of the obligation was not ascertainable from the record. "[T]he purpose of the statute is not merely to give notice that the property is encumbered, but to provide a specific date for the expiration of the encumbrance." (*Ibid.*; see also *Nicolopulos v. Superior Court* (*Nicolopulos*) (2003) 106 Cal.App.4th 304, 310 [130 Cal.Rptr.2d 626] [where note not recorded, due date not "ascertainable from record" where trust deed silent as to payment date].) Both *Miller* and *Nicolopulos* imply that had the note itself been recorded, the shorter 10-year statute would have applied because a recorded note would provide a due date "ascertainable from the record."

Here, the October 1992 Notice of Default was recorded and contained the due date of the Juniper Note (as extended); thus, the due date is "ascertainable from the record" and the shorter 10-year limitations period of section 882.020, subdivision (a)(1) applies. Buckeye's argument amounts to a contention that "ascertainable from the record" means "ascertainable from the recorded trust deed." That argument too narrowly constricts the statutory language, and is unsupported by any authority. On the contrary, a common-sense reading of "ascertainable from the record" means that any recorded document that contains the due date of the note secured by the trust deed in question will suffice.

### 2. *The Filing of the Two Lis Pendens in Marik's Federal and State Court Actions Reset the Time Limits Under MRTA.*

Buckeye argues that under section 880.260, Marik's litigation and the lis pendens that were filed in those actions either tolled the application of section

real property titles should be determinable to the extent practicable from an examination of recent records only. [¶] (b) It is the purpose of the Legislature in enacting this title to simplify and facilitate real property title transactions in furtherance of public policy by enabling persons to rely on record title to the extent provided in this title, with respect to the property interests specified in this title, subject only to the limitations expressly provided in this title and notwithstanding any provision or implication to the contrary in any other statute or in the common law. This title shall be liberally construed to effect the legislative purpose."

882.020 or rendered it inapplicable. We conclude the filing of the two lis pendens in Marik's federal and state court actions reset the time limits under MRTA so that a 10-year period of limitations runs from the filing date of the last lis pendens filed within the original time limits of MRTA.

■ Section 880.250 subdivision (a) provides that the time limits of the MRTA "are absolute and apply notwithstanding any disability or lack of knowledge of any person or any provisions for tolling a statute of limitation and notwithstanding any longer time applicable pursuant to any statute of limitation." The Legislature did, however, enact a mechanism to extend the statute. Section 882.020, subdivision (a)(3) provides that a notice of intent to preserve interest may be filed within the statutory periods of section 882.020, subdivision (a) and operates to extend the statutory period 10 years from the date of filing of the notice. (§ 882.020, subd. (a)(3).) This extension is in effect a one-time-only provision. (See Legislative Com. com., Senate, 1982 Addition, 7 West's Ann. Civ. Code foll. § 882.020, (2006 Supp.) pp. 229–230.)

■ The Legislature also recognized the operation of lis pendens. Section 880.260 provides in relevant part that: "An interest in real property, as specified in this title, does not expire or expire of record and is not unenforceable pursuant to this title at the time prescribed in this title if within the time an action is commenced to enforce, establish, clear title to, or otherwise affect the interest and a notice of the pendency of the action is recorded as provided by law." As stated in the Law Revision Commission comments, "[s]ection 880.260 makes clear that there is no expiration of an interest in real property by operation of law pursuant to this title if a lis pendens is recorded before expiration. This is a specific application of the general provisions governing the effect of a lis pendens."[12] (Law Rev. Com. com., 7 West's Ann. Civ. Code, *supra*, foll. § 880.260, p. 223.)

■ A lis pendens provides constructive notice of the litigation, such that any judgment later obtained in the action relates back to the filing of the lis pendens. (*Bishop Creek Lodge v. Scira* (1996) 46 Cal.App.4th 1721, 1734 [54 Cal.Rptr.2d 745].) A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the

---

[12] The statutory provision governing lis pendens, Code of Civil Procedure section 405.24, provides that "[f]rom the time of recording the notice of pendency of action, a purchaser, encumbrancer, or other transferee of the real property described in the notice shall be deemed to have constructive notice of the pendency of the noticed action as it relates to the real property and only of its pendency against parties not fictitiously named. The rights and interest of the claimant in the property, as ultimately determined in the pending noticed action, shall relate back to the date of the recording of the notice." Code of Civil Procedure section 409 concerning the effect of lis pendens was repealed effective January 1, 1993. (Stats. 1992, ch. 883, § 1, p. 4100.)

property after the action is filed will be bound by the judgment. (*BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 966, 967 [89 Cal.Rptr.2d 693].) Even after judgment, a lis pendens remains effectively on the record unless a statutory ground for expungement is established. (*Knapp Development & Design v. Pal-Mal Properties, Ltd.* (1987) 195 Cal.App.3d 786, 791 [240 Cal.Rptr. 920].)

However, section 880.260 does not provide any time limits (an interest "does not expire or expire of record and is not unenforceable pursuant to this title") where an action has been filed "to enforce, establish, clear title to, or otherwise affect the interest" and a lis pendens is recorded. Although it is fair to infer that the Legislature presumed that such an action would clear title to the property, leaving no ancient interests outside the record to impair marketability of title, the statutory mechanism is not limited to such a case. Because all that section 880.260 requires is the commencement of an action, coupled with the recording of a lis pendens, the action itself could fail to come to judgment, or could fail to result in the clearing of title, and an ancient mortgage could remain viable and subject to litigation beyond the time limits contemplated by the statute. Such was the case here.

▮ If the statute were read to permit a lis pendens to cloud title indefinitely under section 880.260, this would impede the purposes of the MRTA. To further the Legislature's stated intent to promote marketability of title by removing ancient mortgages from the record by operation of law, we must harmonize section 880.260 with section 882.020, subdivision (a)(3), the other provision permitting extension of the time limits of MRTA by a party. In that circumstance, the Legislature adopted the 10-year limit applicable where the due date is ascertainable. There is no reason to infer that it or the Legislature would intend a longer period in the analogous extension of section 880.260. The lis pendens is a fact ascertainable from the record and serves to give notice of a date certain from which the statute may run. This is consistent with the apparent legislative purpose of permitting the parties to conclude their litigation by providing that an interest "does not expire or expire of record and is not unenforceable pursuant to this title" if an action is commenced and a lis pendens filed. (§ 880.260.) However, if no limit were applied when a lis pendens is filed, a lawsuit not brought to judgment could cloud title indefinitely, despite the statutory purpose to limit such uncertainty. Such a result does not appear to serve the statutory scheme and is inconsistent with the choice to limit to 10 years the extension of a recorded interest where a fixed date appears on the record. Therefore, under section 880.260, if an action is commenced and a lis pendens filed, the running of the limitations period under the MRTA is reset and a 10-year limitations period commences on the date of the recording of the lis pendens. After the expiration of the recommended 10-year period, the power of sale in the trust deed expires.

■ Therefore, the statute has not yet run in this case because the last lis pendens was recorded in 1999, within the 10-year time period provided by section 882.020, subdivision (a)(1), and this lis pendens recording generated an additional 10-year period.

## DISPOSITION

The judgment of the Superior Court is reversed. Appellant is to recover its costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 13, 2006, S143763.