[No. C058270. Third Dist. Oct. 13, 2009.]

NANCY A. SCHMIDLI et al., Plaintiffs and Respondents, v.
RODNEY K. PEARCE et al., Defendants and Appellants.

## Counsel

Heiser Law Corporation and Jeffrey D. Heiser for Defendants and Appellants.

Mullen Sullivan & Newton and Craig Rasmussen for Plaintiffs and Respondents.

## Opinion

**NICHOLSON, J.**—Plaintiffs brought this quiet title action to extinguish a lien of a deed of trust held by defendants against their property. Plaintiffs claim defendants' lien expired under a 10-year statute of limitations triggered by defendant's recording of a notice of default. Defendants claim their notice of default did not trigger the 10-year statute, and their lien remains viable under a 60-year statute of limitations.

Two appellate decisions addressed this issue and reached different results. *Slintak v. Buckeye Retirement Co., L.L.C., Ltd.* (2006) 139 Cal.App.4th 575 [43 Cal.Rptr.3d 131] (*Slintak*) concluded a notice of default triggered the 10-year statute. *Ung v. Koehler* (2005) 135 Cal.App.4th 186 [37 Cal.Rptr.3d 311] (*Ung*) determined a notice of default did not trigger the 10-year statute where the notice was recorded after the 10-year period had expired, and the 60-year statute applied.

The trial court here relied upon *Slintak* and granted summary judgment in favor of plaintiffs. Although the notice of default in this case was recorded before the 10-year period expired, we conclude *Ung* is the better reasoned authority applicable here, and we reverse the judgment.

FACTS

By means of a cashier's check dated April 22, 1986, Mary Pearce loaned $40,000 to her brother, Robert Maple. On January 11, 1990, Mary recorded a deed of trust securing the debt. The deed of trust identified Robert and his wife, Stella Maple, as trustors, and Mary as the trustee. It encumbered real property owned by Robert and Stella located at 1048 and 1050 East Indiana Street in Woodbridge, California. The deed did not include a copy of an underlying promissory note, nor did it indicate the date the obligation matured.

On January 11, 1994, Mary recorded a notice of default. The notice indicated Robert and Stella owed $65,760 "as of December 22, 1993." The notice stated all sums secured by the deed of trust were immediately due and payable, and that Mary intended to cause the real property to be sold to satisfy the debt.

However, after recording the notice of default, Mary took no action to foreclose nonjudicially upon the property. No notice of intent to preserve the security interest was recorded pursuant to Civil Code section 882.020, subdivision (a)(3).

Stella Maple died in 1999, Mary Pearce died in 2000, and Robert Maple died in 2003. Mary's interest in the loan and deed of trust passed to her children, defendants Rodney K. Pearce, Mary Hall, and John Pearce. (John Pearce is not a party to this appeal.) Robert's interest in the real property passed to his children, plaintiffs Nancy A. Schmidli and Patrick Maple, and their spouses.

## PROCEDURAL HISTORY

On August 31, 2006, more than 12 years after the loan matured according to the date stated in the 1994 notice of default, plaintiffs filed this action against defendants to quiet title and to obtain a declaration that the deed of trust had been extinguished.

■ Plaintiffs moved for summary judgment. They claimed enforcement of the deed of trust was barred under a 10-year statute of limitations contained in Civil Code section 882.020, subdivision (a)(1), as that statute read prior to January 1, 2007.[1] Under that statute, the lien of a deed of trust expires 10 years after the last date fixed for payment of the debt if that date "is ascertainable from *the record.*" (Former ＇§ 882.020, subd. (a)(1); Stats. 1982, ch. 1268, § 1, pp. 4671, 4676, italics added.) Plaintiffs claimed the "record" included any recorded document that disclosed the debt's maturity date, including a notice of default.[2]

Defendants argued enforcement was not barred, claiming a 60-year statute of limitations found at former section 882.020, subdivision (a)(2), applied. Under that subdivision, if the last date fixed for payment of the debt "is not ascertainable from *the record,*" a lien of a deed of trust expires 60 years after the date the deed of trust was recorded. (Former § 882.020, subd. (a)(2), italics added.) Defendants argued the "record" was limited to the recorded deed of trust, which in this case did not disclose the debt's maturity date. If that is so, the 60-year statute applied.

Alternatively, defendants asserted that an amendment to section 882.020, effective January 1, 2007, was retroactive, and that it resulted in the 60-year statute governing enforcement of the deed of trust. By this amendment,

---

[1] Further undesignated section references are to the Civil Code.

[2] Former section 882.020 provided in relevant part: "(a) Unless the lien of a mortgage, deed of trust, or other instrument that creates a security interest of record in real property to secure a debt or other obligation has earlier expired . . . , the lien expires at, and is not enforceable by action for foreclosure commenced, power of sale exercised, or any other means asserted after, the later of the following times:

"(1) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is ascertainable from the record, 10 years after that date.

"(2) If the final maturity date or the last date fixed for payment of the debt or performance of the obligation is not ascertainable from the record, or if there is no final maturity date or last date fixed for payment of the debt or performance of the obligation, 60 years after the date the instrument that created the security interest was recorded." (Stats. 1982, ch. 1268, § 1, pp. 4671, 4676.)

the Legislature rewrote the phrase "ascertainable from *the record*" in subdivision (a)(1) and (2) to read "ascertainable from *the recorded evidence of indebtedness*." (Italics added.) Defendants claimed the Legislature, by this amendment, clarified that it originally intended the document recording the indebtedness, such as a deed of trust, to be what determined which statute of limitations applied, and a notice of default was not "the recorded evidence of indebtedness" referred to in section 882.020.

The trial court granted plaintiffs' motion for summary judgment on October 31, 2007. Relying on the Second Appellate District's holding in *Slintak* that for purposes of former section 882.020, the debt's maturity date may appear in any recorded document, including a notice of default, the court held the recorded notice of default was sufficient evidence in the record to establish the debt's maturity date, and it imposed the 10-year statute of limitations contained in former section 882.020, subdivision (a)(1). The trial court also determined the 2007 amendment, whatever its meaning, was not retroactive and did not apply.

On appeal, defendants claim the trial court erred in granting summary judgment. They assert *Slintak* was wrongly decided and the 60-year statute applies under former section 882.020, subdivision (a)(2), or, alternatively, the 2007 amendment is retroactive and the 60-year statute applies under current section 882.020, subdivision (a)(2).

## DISCUSSION

### I

### *Former Section 882.020*

Defendants claim the *Slintak* court reached the wrong result. That court determined the phrase "the record" in former section 882.020 meant any recorded document. Thus, if a recorded notice of default included the debt's maturity date, it was sufficient to trigger the 10-year statute of limitations. Defendants contend "the record," interpreted correctly, means a recorded document reflecting the actual debt obligation, such as a deed of trust or a promissory note, and not a notice of default. We agree. Interpreting "the record" to mean any recorded document would render the 60-year statute nugatory, an interpretation which statutory construction is designed to avoid.

■ "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ If we cannot discern the Legislature's clear intent from the plain language of the statute, or if the language is susceptible to more than one interpretation, " 'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.]" (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].)

■ "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian, supra*, 45 Cal.3d at p. 735.)

Applying these rules to the case at hand, we part ways from *Slintak* because that decision, unlike *Ung*, relied solely on a literal interpretation of the phrase "the record" without paying any attention to the phrase's context, the phrase's possible other meanings, or the effect the court's interpretation has on other related statutes. *Ung* followed these rules of construction and reached a decision that compels our resolution of this case.

In *Slintak*, a mortgagee filed an action to foreclose upon real property encumbered by its deed of trust. A notice of default recorded in 1992 stated

the loan became due in January 1992. The mortgagee filed its action in January 2003, 11 years after the note matured. The property owners cross-complained against the mortgagee for quiet title and cancellation of the trust deed, claiming the mortgagee's action was barred by the 10-year statute of limitations. The mortgagee argued the 10-year statute applied only when the maturity date was ascertainable from the recorded deed of trust, not from any other recorded document. The trial court, however, granted summary judgment in favor of the property owners, concluding the 10-year statute applied. (*Slintak, supra,* 139 Cal.App.4th at pp. 579–582.)

The Second Appellate District in *Slintak* agreed with the trial court on this point (but reversed by finding the 10-year period had been extended under a statute not relevant to this action). The court determined the phrase "the record" was unambiguous, and it meant the 10-year statute applied if the debt's maturity date could be ascertained from any recorded document, including a notice of default. The court stated that limiting the phrase to refer to just the recorded trust document "too narrowly constricts the statutory language, and is unsupported by any authority. On the contrary, a common-sense reading of 'ascertainable from the record' means that any recorded document that contains the due date of the note secured by the trust deed in question will suffice." (*Slintak, supra,* 139 Cal.App.4th at p. 585.)

The court did not analyze whether its interpretation of the phrase "the record" was consistent with other relevant provisions of the statute. The court relied solely on its understanding of a commonsense meaning of the words, "the record." In our opinion, this was inadequate under the circumstances.[3]

We agree with the analysis of the phrase "the record" contained in *Ung*, a decision of the First Appellate District decided about five months before *Slintak* but not mentioned in the *Slintak* opinion. The *Ung* court's analysis of the phrase in its statutory context leads us to conclude the phrase cannot mean "any recorded document" for purposes of former section 882.020.

In *Ung*, a borrower gave a promissory note to a lender that was secured by a deed of trust on real property. Apparently, the recorded deed of trust did not

---

[3] The cases relied upon by the *Slintak* court, *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 310 [130 Cal.Rptr.2d 626], and *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1708–1709 [33 Cal.Rptr.2d 288], do not support *Slintak*'s conclusion. In both of those cases, the Court of Appeal determined the 60-year statute applied where the recorded deed of trust did not indicate the loan's maturity date. Neither case discussed, or implied, whether a notice of default could satisfy the requirement that the maturity date be ascertainable from the record.

state the note's maturity date. Eleven years after the note became due, the lender recorded a notice of default that specified the final maturity date. The borrower sued, claiming the lender was time-barred from enforcing the deed of trust in a nonjudicial foreclosure sale of the property because, among other reasons, the filing of the notice of default made the maturity date ascertainable from the record, and the 10-year statute had expired by the time the notice of default was recorded. (*Ung, supra*, 135 Cal.App.4th at p. 191.)

The *Ung* court disagreed with the borrower's contention. It first determined the phrase "the record" was susceptible to more than one meaning: "The term 'the record,' undefined in the Act, does not have a commonly accepted definition, either in everyday life or in the law of real estate transactions." (*Ung, supra*, 135 Cal.App.4th at p. 201.) In the context of former section 882.020, the phrase could refer either to all recorded documents, or only to recorded documents that by statute gave constructive notice to the general public of their contents. (135 Cal.App.4th at p. 201.)

Finding the plain language inconclusive, the court turned to extrinsic aids for assistance. Former section 882.020's legislative history provided no help. Nothing in that evidence addressed the possibility that the underlying obligation might not be contained in the record. (*Ung, supra*, 135 Cal.App.4th at pp. 201–202.)

The court, however, found guidance by considering the phrase in the context of its general statutory scheme. It noted that recording a notice of default is a prerequisite for exercising a power of sale under a deed of trust. (§§ 2924, 2924b.) The notice of default must specify the breach of the obligation with sufficient details in order to give the debtor an opportunity to cure the default. (§§ 2924, 2924c.) Though not specifically required by statute, the date of the breach is likely needed in the notice of default in order to provide the debtor with a legally adequate statement of the breach, or to demonstrate the breach is sufficiently substantial in nature to authorize the lender to proceed with foreclosure. (*Ung, supra*, 135 Cal.App.4th at pp. 202–203.)

With this background in mind, it became clear that interpreting the phrase "the record" to refer to any recorded document created a "catch-22" for any lender who recorded the deed of trust with the intent of availing itself of the 60-year statute of limitations.[4] "[P]laintiff's argument creates a serious dilemma for a beneficiary attempting nonjudicial foreclosure after more than 10

---

[4] A "catch-22" is defined as "a problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule . . . ; also: the circumstance or rule that denies a solution." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 194, col. 2, italics omitted.)

years have elapsed from maturity of the underlying debt. If the previously recorded documents do not disclose the final maturity date of the obligation, section 882.020, subdivision (a)(2), grants the beneficiary 60 years from the date of recording of the deed of trust to seek nonjudicial foreclosure. As a prerequisite to seeking nonjudicial foreclosure, however, section 2924 requires such a beneficiary to record a notice of default. Unless the beneficiary is willing to run a risk of insufficiency of notice, the notice of default will state the final maturity date in its description of the nature of the breach. Upon recordation of the notice of default, plaintiff's interpretation would instantly reduce the time for nonjudicial foreclosure from 60 years to 10 years, since recordation of the notice would make it possible to ascertain the final maturity date from the record. Because, under our hypothetical, those 10 years had already elapsed, recording the notice of default would deprive the beneficiary of nonjudicial foreclosure.

■ "In other words, plaintiff argues that every beneficiary who is otherwise entitled to 60 years under section 882.020, subdivision (a)(2), and fails to seek nonjudicial enforcement within the first 10 years, will be entitled to the remaining years only until the beneficiary files the required notice of default, at which time the beneficiary will retroactively be entitled to only 10 years, all of which has by definition elapsed. This argument creates a classic catch-22 by requiring a party seeking nonjudicial foreclosure to file a document, the notice of default, whose filing prevents the party from obtaining nonjudicial foreclosure. Statutes should be construed to avoid 'the absurdity of creating [a] catch-22.' [Citations.]" (*Ung, supra*, 135 Cal.App.4th at pp. 203–204.)

To avoid this absurdity, the court held that a notice of default that is recorded more than 10 years after the obligation's maturity date does not constitute part of the "record" for purposes of former section 882.020, subdivision (a). (*Ung, supra*, 135 Cal.App.4th at p. 204.) "[O]nce the beneficiary of a deed of trust has become entitled to claim the 60-year time limit of section 882.020, subdivision (a)(2), the beneficiary does not lose that entitlement merely by filing a notice of default that specifies the 'final maturity date' of the underlying debt." (*Id.* at pp. 190–191.)

Of relevance here, the *Ung* court limited its holding to the facts before it. It expressly rendered "no opinion about . . . the legal effect of a notice of default recorded *before* the expiration of 10 years." (*Ung, supra*, 135 Cal.App.4th at p. 204, fn. 9, italics added.)

However, *Ung*'s analysis applies equally to the facts of this case, where the notice of default was recorded before the 10-year period expired. Under plaintiffs' argument, defendants were entitled to the 60-year statute of

limitations until they filed a notice of default, as they were required to do in order to enforce the deed of trust lien. If the notice of default is what made the maturity date ascertainable from the record, the law as interpreted by plaintiffs compelled defendants to surrender their right to the 60-year statute for the 10-year statute. Since all trust deed beneficiaries must file a notice of default before enforcing their lien, and since that notice must contain the obligation's maturity date, all beneficiaries will lose their right to claim the 60-year statute. Plaintiffs' argument thus renders the 60-year statute a nullity.

■ "[I]t is well settled 'that in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' [Citations.]" (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 18 [270 Cal.Rptr. 796, 793 P.2d 2].) Under this rule of interpretation, we cannot adopt plaintiffs' argument and effectively excise the 60-year statute of limitations from the code.

■ Rather, we must give effect to all of its parts and conclude, consistent with *Ung*, that a notice of default does not constitute a part of the "record" for purposes of former section 882.020, subdivision (a). Here, because the loan's maturity date was not ascertainable from the record, defendants' rights to enforce the terms of the deed of trust had not expired, and will not expire until 60 years following the recording of the deed of trust. Accordingly, summary judgment was granted to plaintiffs in error.

II

*Section 882.020 As Amended Effective 2007*

■ Although we need not reach defendants' arguments concerning the retroactivity of the 2007 amendment to section 882.020, we take note that the amendment was at a minimum a legislative clarification confirming the meaning we have assigned to section 882.020. "Although an expression of legislative intent in a later enactment is not binding upon a court in its construction of an earlier enacted statute, it is a factor that may be considered. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 492 [30 Cal.Rptr.3d 823, 115 P.3d 98].)

The amendment confirms that a notice of default is not part of the record from which the loan's maturity date can be ascertained for purposes of section 882.020. As mentioned, the amendment revised the phrase "ascertainable

from the record" to read "ascertainable from the recorded evidence of indebtedness." An evidence of indebtedness is a security, such as a deed of trust. (See Corp. Code, § 25019.) A notice of default is not a security or evidence of indebtedness. It is an allegation of the existence of a debt, and thus cannot be an evidence of indebtedness for purposes of section 882.020.

The amendment's legislative history also indicates the amendment was adopted to codify the holding of *Ung* and clarify that notices of default were not part of the record. According to legislative committee reports, the amendment was intended "to provide certainty as to the expiration date of the lien, preventing subsequent items from becoming part of the 'record,' that would alter the expiration date of the lien. Essentially, this codifies a recent Court of Appeal case that stated that 'once the beneficiary of a deed of trust has become entitled to claim the 60-year time limit . . . , the beneficiary does not lose that entitlement merely by filing a notice of default that specifies the "final maturity date" of the underlying debt.' [*Ung v. Koehler* (2005) 135 Cal.App.4th 186, 190–191 [37 Cal.Rptr.3d 311].]" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2624 (2005–2006 Reg. Sess.) as amended June 22, 2006, p. 12.)

More specifically, the Legislature sought to ensure that the filing of a notice of default would not trigger the 10-year statute: "AB 2624 replaces the word 'record' with 'recorded evidence of indebtedness' which is synonymous with deed of trust so that the filing of a notice of default will not impact the statute of limitations on liens placed on a property with a mortgage." (Assem. Com. on Housing & Community Development, Rep. on Assem. Bill No. 2624 (2005–2006 Reg. Sess.) Apr. 26, 2006, pp. 5–6.)[5]

By codifying *Ung*, the Legislature clarified that a notice of default was not part of the record for purposes of determining the applicable statute of limitations under section 882.020. Our construction of the statute is consistent with the Legislature's intent.[6]

---

[5] Counsel for plaintiffs referred to these legislative committee reports in its opening brief but without requesting we take judicial notice of them. We treat the reference as a request for judicial notice and grant it. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30–32 [34 Cal.Rptr.3d 520].)

[6] At oral argument, counsel for plaintiffs suggested the amendment was limited to excluding notices of default from the record only if the 10-year statute of limitations had expired. The language of the statute and the legislative history just cited indicates counsel's understanding is incorrect. A notice of default is of no relevance in determining when the loan matured for purposes of section 882.020.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to defendants. (Cal. Rules of Court, rule 8.278(a).)

Blease, Acting P. J., and Robie, J., concurred.

On November 5, 2009, the opinion was modified to read as printed above.