[No. D050794. Fourth Dist., Div. One. Oct. 6, 2008.]

ARTHUR STILLWELL, Plaintiff and Appellant, v.
THE SALVATION ARMY, Defendant and Respondent.

**COUNSEL**

Advantage Law Group and John Rollin Goffar for Plaintiff and Appellant.

White & Case, Daniel James Woods and Sayema J. Hameed for Defendant and Respondent.

OPINION

AARON, J.—

I.

INTRODUCTION

Arthur Stillwell filed this action after The Salvation Army (TSA), his former employer, terminated his employment. In his complaint, Stillwell claimed that TSA breached an implied employment agreement to terminate him only for good cause. At trial, TSA claimed that Stillwell had entered into a written employment agreement (the 1998 Agreement) that provided that Stillwell's employment status was at will. Stillwell, in turn, contended that the 1998 Agreement was invalid because TSA's field secretary for personnel had not signed it, as the terms of the agreement require.

The jury returned a special verdict in which it found that the 1998 Agreement was effective, but also found that TSA had breached an implied agreement to terminate Stillwell only for cause. The jury awarded Stillwell $155,363.38 in damages. After the jury returned its verdicts, TSA moved for judgment notwithstanding the verdict (JNOV) and for a new trial. TSA's primary contention in both motions was that the at-will provision in the 1998 Agreement precluded Stillwell from prevailing on any claim that TSA breached an implied agreement to terminate him only for cause. The trial court granted TSA's motion for JNOV, noting that the jury had found that the 1998 Agreement was effective, and stating, "[T]he express terms of the 1998 written agreement must prevail over the contradictory terms of the implied agreement." After ruling on TSA's motion for JNOV, the trial court ruled that TSA's motion for new trial was moot, and entered judgment in favor of TSA.

On appeal, Stillwell claims that the trial court erred in granting TSA's motion for JNOV. We requested that the parties submit supplemental briefs addressing whether the trial court improperly based its grant of judgment in favor of TSA as a *matter of law* in part on the fact that the *jury* determined that the 1998 Agreement was effective.

In their supplemental briefs, and at oral argument, counsel for both parties conceded that the verdicts are inconsistent. Stillwell's counsel also conceded at oral argument that if this court were to reverse the JNOV, the proper disposition would be to direct the trial court to grant TSA's motion for new trial. TSA argued in its supplemental brief that this court could affirm the judgment on the alternative ground that the trial court properly concluded that Stillwell was estopped as a matter of law from disputing the effectiveness of

the 1998 Agreement. TSA also argued in its respondent's brief that Stillwell failed to present sufficient evidence of the existence of an implied contract to terminate his employment only for cause, irrespective of the 1998 Agreement.

We reject TSA's alternative grounds for affirming the judgment, reverse the judgment in favor of TSA, and remand the matter with directions to grant TSA's motion for a new trial.

II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Pretrial procedure*

In June 2005, Stillwell filed a two-count complaint claiming breach of implied contract and breach of the covenant of good faith and fair dealing. In his claim of breach of implied contract, Stillwell alleged that he had entered into an implied-in-fact employment contract with TSA pursuant to which TSA had promised to terminate his employment only for good cause. Stillwell claimed that TSA breached this implied contract by terminating his employment on June 23, 2003. In his claim of breach of the covenant of good faith and fair dealing, Stillwell alleged that TSA breached the covenant of good faith and fair dealing by, among other actions, terminating him without good cause.

In January 2006, TSA filed a motion for summary judgment. In its brief in support of its motion, TSA noted that the parties had entered into the 1998 Agreement, which provides, "The employment of the Employee hereunder shall be 'at will' and for no specified term. The Salvation Army may terminate the Employee's employment without cause by giving written notice to the Employee." TSA argued that Stillwell's causes of action, which were premised on the alleged existence of an implied contract to terminate only for cause, failed as a matter of law in view of the at-will provision in the 1998 Agreement.

Stillwell opposed TSA's motion for summary judgment, in part on the ground that there was a triable issue of fact as to whether the 1998 Agreement was effective. Stillwell pointed out that the 1998 Agreement contains the following provision, " 'Agreements for all new exempt positions or for positions with salaries over $30,000 annually are not effective until

signed by the Field Secretary for Personnel,' " and noted that the assistant field secretary for personnel, *not* the field secretary for personnel, had signed the 1998 Agreement.[1]

In May 2006, the trial court denied TSA's motion for summary judgment, concluding in part that there was a triable issue of fact as to the enforceability of the 1998 Agreement.

In September 2006, TSA filed a motion in limine to exclude any parol evidence that contradicted the terms of the 1998 Agreement. TSA also filed a motion in limine to prevent Stillwell from presenting "EVIDENCE OF ALLEGED ASSURANCES OF PERPETUAL EMPLOYMENT." In November 2006, Stillwell filed a motion in limine to exclude the 1998 Agreement, on the ground that the agreement was invalid because the field secretary for personnel had not signed it.

In January 2007, the trial court held a hearing on the in limine motions. At the outset of the hearing, the court stated, "I think that the only way that a jury's going to make sense out of this case is to have everything come in, and make a determination as to whether or not there was a contract between the parties to terminate only for cause." After hearing argument from counsel, the court denied all of the in limine motions.

B. *The trial*[2]

Stillwell became an employee of TSA in 1962 and was employed with TSA until 1977. He later worked for TSA again during periods of the early 1980's, and worked continuously for TSA from 1987 until he was terminated on June 23, 2003. In support of his claim that TSA entered into an implied contract to terminate his employment only for good cause, Stillwell presented various types of evidence pertaining to actions TSA had taken throughout his career. (See pt. III.A.4.b., *post.*) For example, Stillwell presented evidence that various TSA managers had repeatedly assured him of continued employment, and evidence that TSA's usual practice was to terminate employees only for cause. (*Ibid.*)

Stillwell held a number of different positions with TSA throughout his career. From February 1994 until the beginning of 1998, Stillwell was TSA's

[1] Stillwell suggested that this signature requirement applied to the 1998 Agreement in stating that his salary for the position allegedly governed by the 1998 Agreement was $100,000. In addition, in its statement of undisputed facts, TSA stated that Stillwell was taking a "new position" governed by an "Exempt Employee Employment Agreement," thereby suggesting that the position was a "new exempt position," under the terms of the 1998 Agreement.

[2] Our abbreviated recitation of the evidence presented at trial is limited to what is required for the disposition of this appeal.

executive director for San Diego County, and divisional development director. In late 1997, Stillwell's supervisor, Colonel Donald Sather, asked Stillwell to oversee the construction of the Ray and Joan Kroc Community Center. Stillwell accepted Colonel Sather's offer. On January 28, 1998, TSA's assistant field secretary for personnel, Sharon Robertson, signed the 1998 Agreement, which governed this new position.[3]

Colonel Bell presented Stillwell with the 1998 Agreement in April 1998. Stillwell signed the 1998 Agreement on April 16. The 1998 Agreement states that Stillwell's employment status is at will. The 1998 Agreement also contains a provision that states that the agreement is "not effective until signed by the Field Secretary for Personnel." TSA presented extrinsic evidence that it was TSA's custom and practice to have the assistant field secretary for personnel sign such employment agreements, rather than the field secretary. In a deposition that was introduced in evidence at trial, Robertson testified that she regularly signed employment agreements under the authority of the field secretary for personnel.

At the close of the presentation of Stillwell's evidence, TSA made an oral motion for nonsuit. TSA's counsel argued that the at-will provision in the 1998 Agreement precluded Stillwell from claiming breach of an implied contract to terminate his employment only for cause. TSA's counsel also argued that Stillwell had failed to present evidence sufficient to overcome the presumption that his employment status was at will. The trial court denied the motion.

During closing argument, Stillwell's counsel argued that TSA's failure to properly manifest its assent to be bound by the 1998 agreement rendered the agreement ineffective. Stillwell's counsel further claimed that TSA had breached an implied contract to terminate Stillwell only for cause.

TSA's counsel argued that a reasonable person would conclude that the 1998 Agreement was effective. In support of this argument, TSA's counsel discussed evidence pertaining to TSA's practice of having the assistant field secretary for personnel sign employment agreements on behalf of the field secretary for personnel. TSA's counsel also argued that TSA had neither entered into, nor breached, any implied contract to terminate Stillwell only for cause.

---

[3] To be precise, on the last page of the 1998 Agreement, is the word, "Approved:" and a signature block. Directly beneath the signature block, in typewritten letters, are the words, "Field Secretary for Personnel" and "Date." The word "Field" is crossed out and the word "ASST" is handwritten immediately adjacent to the crossed-out word. The signature of Sharon Robertson and the date "1/28/98" are handwritten on the signature block.

At the close of evidence, TSA moved for a directed verdict. The trial court denied the motion. (See pt. III.A.1., *post.*)

On January 25, 2007, the jury returned a special verdict. In responding to the first question on the verdict form, the jury found that the 1998 Agreement was effective. In responding to several additional questions on the form, the jury found that TSA had breached a promise to discharge Stillwell only for good cause. The jury awarded Stillwell $155,363.38 in damages.

C. *Postverdict procedure*

TSA filed a motion for new trial and a motion for JNOV. The trial court granted the motion for JNOV and concluded that TSA's motion for new trial was therefore moot. On April 12, the trial court entered judgment in favor of TSA.

D. *The appeal*

Stillwell timely appeals from the trial court's April 12 judgment.

## III.

## DISCUSSION

A. *The trial court erred in granting TSA's motion for JNOV*

1. *Factual and procedural background*

During the trial, outside the presence of the jury, the trial court held a hearing for the purpose of discussing jury instructions and the special verdict form. Counsel for both parties indicated to the court that the parties had not reached agreement concerning the wording of the special verdict form. Among the issues as to which the parties disagreed was how to phrase an inquiry to the jury asking it to consider whether the 1998 Agreement was effective, and whether there was an implied agreement that varied the terms of the 1998 Agreement:

"[Stillwell's counsel]: What they added [to the special verdict form] is question one that says, 'Does this written agreement control[?]' If you answer no, that is the end of the case.

"The court: Well, I don't know that that is appropriate; although that's essentially what the jury is going to decide isn't it?

"[Stillwell's counsel]: Well, they could also say that the written agreement exists and there's terms that vary the written agreement.

"[TSA's counsel]: Right. So they can say it doesn't control.

"The court: Right. [¶] I mean the jury is going to make a determination as to whether Mr. Stillwell is bound by the written agreement which says that he's an at-will employee. Or whether—or I suppose the jury can find that the . . . written agreement . . . doesn't control, but that he's waived or is estopped to deny it. [¶] Or I suppose the jury can make a determination that notwithstanding the agreement, there was an implied agreement that he only could be terminated for cause and that he not be laid off.

"[TSA's counsel]: And what you just recited is almost verbatim what the form says, Your Honor.

"The court: I mean why is that not appropriate?

"[Stillwell's counsel]: Well the way the form is written now, the first question . . . says, 'Was there a written agreement that governs?' And if that's it, that's the end of the determination. [¶] So I guess my point is there should be a question of whether it's a valid agreement and whether or not there's terms that vary."

During the same hearing, TSA's counsel reiterated TSA's position that, to the extent the jury found that the 1998 Agreement, which contained the at-will clause, was effective, there could be no breach of an implied agreement to terminate only for good cause. TSA's counsel argued, "[I]f the written agreement controls, then cause is irrelevant." The trial court ultimately agreed to allow each party to prepare a proposed special verdict form to submit to the court. The court would then determine the final format of the verdict form. The court also stated that it would hold a telephonic conference with counsel the following day, Friday, January 19.

On January 19, the court held a telephonic conference call with counsel. The call was not reported, and there is no record of what was said during the call. The following Monday, January 22, after the close of evidence, TSA filed a motion for a directed verdict. In its motion, TSA stated that the court had ruled on January 19 that Stillwell was estopped from claiming that the 1998 Agreement was unenforceable. TSA further argued that the 1998 Agreement was integrated, and that the unambiguous at-will provision precluded Stillwell from prevailing on his theory of breach of an implied agreement to terminate his employment only for cause.

Outside the presence of the jury, the trial court denied TSA's motion for a direct verdict, stating: "I perused the motion for directed verdict, which I'm going to deny. We have had a significant amount of argument, I'm going to let the case go to the jury, and let the jury make a determination. Even if the written agreement is effective, we still have the issue of whether or not the conduct and oral statements of [TSA] form an implied agreement that could trump the written Agreement."

The court also denied TSA's request that the court give a jury instruction that provided in relevant part, "a term of the contract between Arthur Stillwell and [TSA] may not be implied if it is inconsistent or in conflict with a term of the written contract. . . ."

The court then stated: "[W]e had an off-the-record discussion regarding jury discussions [*sic*: instructions] on Friday, and I'm convinced that after hearing the evidence that [Stillwell] should be estopped from asserting[4] the efficacy of the written contract. So that would obviate having the jury wrestle with something that I think is more of an equitable defense. [¶] But I think after accepting all of the benefits of the contract to then take the position that it's not effective, and not be in a position to return the consideration, I think estoppel applies as a matter of law." After making these comments, the trial court heard argument from the parties regarding whether estoppel applied under the circumstances of the case. TSA argued that Stillwell should be estopped from claiming that the 1998 Agreement was not effective because he "knew of the alleged absence of the required signature," and "[h]e didn't bring it to anybody's attention . . . [because] it was not to his advantage to do that." TSA's counsel also stated that Stillwell should be estopped from disputing the effectiveness of the 1998 Agreement, for the reasons TSA stated in its trial brief.

In its trial brief, TSA noted that a court may find estoppel " ' "where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." ' " (Quoting *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 311 [130 Cal.Rptr.2d 626] (*Nicolopulos*).) TSA claimed that Stillwell should be estopped from repudiating his assent to the 1998 Agreement because he had outwardly manifested his assent to the 1998 Agreement by signing the agreement and accepting its benefits, despite his "secret belief" that the 1998 Agreement was invalid. TSA argued, "[Stillwell] could have raised the issue and any defect could have been cured."

After hearing counsels' arguments, the trial court stated, "That's the ruling. . . . I think it [the doctrine of equitable estoppel] applies clearly."

---

[4] Although the trial court used the term "asserting," it is clear that the court meant "disputing" or "challenging."

The following colloquy then occurred:

"[Stillwell's counsel]: All right. So, but we didn't take 'that out of the special verdict form.

"[TSA's counsel]: Yes, we did.

"[Stillwell's counsel]: Well, the first question still says is the 1998 Agreement effective.

"The court: All right.

"[Stillwell's counsel]: Right. And aren't you ruling—

"The court: There's a waiver issue too.

"[TSA's counsel]: Right. You wanted that in, we need that in there because there's also an issue of waiver.

"[Stillwell's counsel]: Okay.

"The court: All right, are we ready? Do you want to get the jury?"

After the exchange, counsel presented their closing arguments to the jury and the trial court instructed the jury. Notwithstanding the trial court's ruling that Stillwell was estopped from denying the efficacy of the 1998 Agreement, the court instructed the jury pursuant to a modified version of CACI No. 302 regarding whether the 1998 Agreement constituted a contract between the parties.[5]

On January 25, 2007, the jury returned a special verdict form that states in relevant part:

"We answer the questions submitted to us as follows:

---

[5] The instruction provided: "[TSA] claims that the parties entered into a written contract. To prove that a contract was created, [TSA] must prove all of the following: [¶] 1. That the contract terms were clear enough that the parties could understand what each was required to do; [¶] 2. That the parties agreed to give each other something of value; and [¶] 3. That the parties agreed to the terms of the contract. [¶] When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions. If [TSA] did not prove all of the above, then a written contract was not created."

"1. Is the 1998 written employment agreement between The Salvation Army and Arthur Stillwell effective?

"__X__ Yes _____ No

"If your answer to question 1 is yes, skip question 2 and go to question 3. If your answer is no, go to question 2.

"2. Did Arthur Stillwell waive the right to assert that his 1998 written employment agreement is not effective?

"_____ Yes _____ No

"Please answer question 3.

"3. Did The Salvation Army promise, by words or conduct, not to discharge Arthur Stillwell except for good cause?

"__X__ Yes _____ No

"If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

"4. Did The Salvation Army discharge Arthur Stillwell without good cause?

"__X__ Yes _____ No

"If your answer to question 4 is no, then stop here, answer no further questions, and have the presiding juror sign and date this form. If you answered yes, then answer question 5.

"5. Was Arthur Stillwell harmed by the discharge?

"__X__ Yes _____ No

"If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

"6. What are Arthur Stillwell's damages?

"$155,363.38."

After the clerk announced the verdict, TSA requested that the court poll the jury. The polling revealed that the jury's vote on special verdict form question number 1 was 10 to two, on question number 3, 10 to two, on question number 4, nine to three, and on question number 5, 10 to two. With respect to question number 6, pertaining to Stillwell's damages, the verdict was unanimous. After polling the jury, the court ordered the verdict recorded and released the jury.

Immediately after the jury left the courtroom, the court discussed the verdict with counsel. The court commented that the jury had found that, "[N]otwithstanding the effective written agreement, there was an implied contract." TSA's counsel agreed with the court's summary of the verdict and replied, "Right, which is entirely inconsistent." After further discussions, the court observed, "We've got a determination by the jury that the employer disregarded that [written agreement] in favor of an implied contract. In other words, they just essentially trumped the written agreement with words and conduct." TSA's counsel again agreed with the trial court's summary of the jury's verdict and remarked, "That seems to be what they did but that is of course contrary to the law."

On February 21, TSA filed a motion for JNOV. In its motion, TSA argued that the court's estoppel ruling and the jury's finding that the 1998 Agreement was effective precluded the jury from finding an implied agreement that TSA would terminate Stillwell's employment only for cause. TSA also contended that the 1998 Agreement, which contains the at-will provision, was integrated, and that Stillwell's evidence of a contrary implied agreement to terminate his employment only for cause was irrelevant and inadmissible, pursuant to the parol evidence rule. TSA further argued, "[Stillwell's] evidence is so lacking that even without an express, at-will employment agreement, JNOV would be warranted."

That same day, TSA filed a notice of intention to move for a new trial. The following day, February 22, the trial court entered judgment on the jury's verdict in favor of Stillwell. On March 2, TSA filed a motion for new trial. In its motion, TSA maintained that it was entitled to a new trial on numerous grounds, most of which related to TSA's contention that an employee's entering into a written employment contract that contains an at-will provision precludes the employee from prevailing on a claim that the employer breached an implied agreement to terminate only for cause. TSA argued, "[T]he jury's finding that the [1998 Agreement] is enforceable directly contradicts its finding that [TSA] breached an implied agreement to the contrary."

Stillwell filed an opposition to TSA's motion for JNOV. In his opposition, Stillwell argued that there was substantial evidence supporting the jury's

verdict that TSA had breached an implied agreement to terminate him only for cause. Stillwell also argued that in ruling on TSA's motion for JNOV, the trial court was required to disregard TSA's evidence in support of its contention that the parties entered into the 1998 Agreement. Stillwell further argued that the terms of the 1998 Agreement and the existence of an implied contract to terminate his employment only for cause were not inconsistent. Stillwell raised numerous arguments in support of this contention, claiming, for example, that the 1998 Agreement was not integrated, and that the terms of an employee handbook that the 1998 Agreement incorporated by reference were inconsistent with the at-will provision contained in the 1998 Agreement.

Stillwell also filed an opposition to TSA's motion for new trial. In his opposition, Stillwell reiterated his argument in his opposition to the motion for JNOV that the 1998 Agreement and an implied contract to terminate his employment only for cause were not inconsistent.

After TSA filed replies to both of Stillwell's oppositions, the trial court issued a tentative ruling granting TSA's motion for JNOV. The trial court summarized the jury's verdict, stating, "The jury determined that the 1998 written agreement was effective, that [TSA] promised 'by words or conduct' not to discharge [Stillwell] except for good cause, and that [TSA] discharged [Stillwell] without good cause, resulting in damages in the amount of $155,363.38." The court further stated, "The terms of the 1998 written agreement and the implied agreement found by the jury are mutually inconsistent."[6] After reviewing the terms of the 1998 Agreement and summarizing the holdings in various appellate cases, the trial court concluded in relevant part: "[T]he express terms of the [1998 Agreement] must prevail over the contradictory terms of the implied agreement. The Court determines that evidence of an implied agreement that is contrary to the express written agreement was inadmissible, resulting in insufficient evidence as a matter of law to support the verdict." The court further stated that its ruling made moot TSA's motion for new trial.

On March 29, the court held oral argument on TSA's motions. That same day, the court confirmed its tentative ruling.

### 2. *Governing law*

In *Jones & Matson v. Hall* (2007) 155 Cal.App.4th 1596, 1607 [66 Cal.Rptr.3d 872] (*Jones*), the court outlined the law that a trial court must follow in ruling on a motion for JNOV: " 'The trial court's power to grant a

---

[6] In its ruling granting TSA's motion for JNOV, the trial court did not refer to its earlier ruling that Stillwell was estopped from denying the effectiveness of the 1998 Agreement.

motion for JNOV is the same as its power to grant a directed verdict. (Code Civ. Proc., § 629.) The court must accept as true the evidence supporting the jury's verdict, disregarding all conflicting evidence and indulging in every legitimate inference that may be drawn in support of the judgment. The court may grant the motion only if there is no substantial evidence to support the verdict. [Citations.] . . .' [Citation.]"

■ In *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682 [24 Cal.Rptr.3d 338], this court outlined the law pertaining to inconsistent verdicts: " 'Inconsistent verdicts are " 'against the law' " ' and are grounds for a new trial. [Citations.] 'The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence. The rule finds parallel expression in the law relating to court findings: "Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error." ' [Citations.] An inconsistent verdict may arise from an inconsistency between or among answers within a special verdict [citation] or irreconcilable findings. [Citation.] Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law. [Citation.] The appellate court is not permitted to choose between inconsistent answers. [Citations.]"

The court in *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336 [100 Cal.Rptr.2d 446] (*Shaw*), addressed a factual scenario similar to that in the present case. In *Shaw*, the plaintiff alleged, among other claims, breach of contract, breach of the implied covenant of good faith, and wrongful discharge in violation of public policy. (*Id.* at p. 1341.) The jury rendered a defense verdict on the breach of contract claim, but awarded the plaintiff $405,153 in damages on the breach of the implied covenant of good faith claim. The jury also found that the plaintiff had been wrongfully discharged, but awarded no damages on this claim. (*Id.* at p. 1341, fn. 4.) In analyzing these verdicts, the *Shaw* court concluded, "The jury's finding that there was no breach of contract is irreconcilable with its finding that [the defendant] did breach the implied covenant of good faith, so both claims must be retried." (*Id.* at p. 1344.) The court reasoned: "The jury's finding that there was no breach of contract implies it believed [the plaintiff] was an at-will employee. The other possibility, that [the defendant] had cause to dismiss [the plaintiff], is refuted by the wrongful termination verdict; the determination that [the plaintiff] was fired as a whistleblower, and not for sexual harassment, necessarily means the jury felt that [the defendant] did not have good cause to rid itself of [the plaintiff]. Yet the finding that [the defendant] acted in bad faith implies the jury believed [the plaintiff] could only be dismissed for cause. The upshot is findings that are irreconcilable: that [the plaintiff] was an at-will employee and that he was not." (*Id.* at p. 1345.)

The *Shaw* court concluded that the proper remedy for the inconsistent verdicts was to order a new trial. (*Shaw, supra,* 83 Cal.App.4th at p. 1344.) The court specifically rejected the parties' arguments that each was entitled to have judgment entered in its favor, stating, "[The plaintiff] is no more entitled than [the defendant] to have the favorable verdict credited and the unfavorable one disregarded." (*Id.* at p. 1346.)

### 3. *The trial court improperly granted TSA judgment as a matter of law based on one of the jury's verdicts*

■ The situation this case presents differs from the usual procedural posture in which a trial court is asked to grant JNOV. In this case, the trial court was asked to grant judgment as a matter of law in favor of TSA, *consistent* with the jury's special verdict that the 1998 Agreement was effective, but *notwithstanding* the jury's special verdicts that TSA breached a promise to discharge Stillwell only for good cause. In its ruling on TSA's motion for JNOV, the trial court noted that, "The jury determined that the 1998 written agreement was effective . . . ." The trial court's reasoning in granting TSA's motion for JNOV is fatally flawed. As is indicated both by the special verdict form and the trial court's ruling on TSA's motion for JNOV, the trial court determined that the effectiveness of the 1998 Agreement was a question for the jury.[7] The trial court could not have granted a directed verdict in favor of TSA on the ground that the 1998 Agreement precluded Stillwell's implied contract claim, since the court determined that the effectiveness of the 1998 Agreement was a jury question. It necessarily follows that the trial court erred in granting TSA's motion for JNOV on this same ground. (See *Jones, supra,* 155 Cal.App.4th at p. 1607.) In other words, a judgment *notwithstanding* the verdict, which a trial court may grant only where a directed verdict would have been properly granted, cannot be dependent on another of the jury's verdicts in the case.

The trial court's reasoning in granting the JNOV appears to have been that the jury's finding that the 1998 Agreement was effective indicated that the jury found that Stillwell was an at-will employee, and that this finding is inconsistent with the jury's other finding that TSA promised to discharge Stillwell only for good cause. We assume for the sake of argument that in ruling on TSA's motion for JNOV, the trial court properly determined that the at-will provision in the 1998 Agreement is inconsistent with the existence of an implied agreement to terminate only for cause. (See *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 389 [46 Cal.Rptr.3d 668, 139 P.3d 56]

---

[7] In its brief in this court, TSA takes the position that the trial court properly submitted the question of the validity of the 1998 Agreement to the jury. TSA states that the issue of the "formation of the 1998 Agreement was a jury issue." (Citing CACI No. 302, Contract Formation—Essential Factual Elements.)

(*Dore*) ["a clear and unambiguous at-will provision in a written employment contract, signed by the employee, cannot be overcome by evidence of a prior or contemporaneous implied-in-fact contract requiring good cause for termination"].)[8] However, assuming that the trial court was correct in this regard, the same inconsistency at issue in *Shaw* exists here. (See *Shaw, supra*, 83 Cal.App.4th at p. 1345 [jury's verdicts indicated that jury found both that plaintiff was an at-will employee and that plaintiff could be discharged only for cause].) As the *Shaw* court held, the remedy for such inconsistent verdicts is not to grant judgment as a matter of law in favor of one of the parties, but rather, to order a new trial. (*Shaw, supra*, 83 Cal.App.4th at pp. 1344–1346.)

The trial court also erred in granting TSA's motion for JNOV on the basis that "evidence of an implied agreement that is contrary to the express agreement was *inadmissible*." (Italics added.) As noted above, the jury was charged with determining whether the 1998 Agreement was effective. Thus, evidence pertaining to the existence of an implied agreement whose terms were inconsistent with the 1998 Agreement was, at the very least, conditionally admissible, since the jury could have determined that the 1998 Agreement was not effective.[9] While evidence of an implied agreement that is inconsistent with the 1998 Agreement would have been inadmissible under *Dore, supra*, 39 Cal.4th 384, if the 1998 Agreement were enforceable *as a matter or law*,[10] the trial court erred in concluding that a *jury* finding that the 1998 Agreement was effective rendered Stillwell's evidence of a contrary implied agreement inadmissible.

The trial court's granting TSA's motion for JNOV was improper for an additional reason. Assuming that the trial court was correct in concluding that the jury's finding that the 1998 Agreement was effective precludes Stillwell from prevailing on his claim of breach of an implied agreement, the jury was never so instructed.[11] On the contrary, the verdict form suggested to the jury that it could find both that the 1998 Agreement was effective and that the implied agreement existed. If the trial court had instructed the jury that it

---

[8] As noted previously (see pt. I., *ante*), both parties have conceded that the verdicts are inconsistent.

[9] To say that evidence of an implied agreement was admissible is not to say that the trial court could not have instructed the jury regarding the limited purpose and manner by which it was to consider such evidence. For example, again assuming for the sake of argument that the at-will provision in the 1998 Agreement is inconsistent with the existence of an implied agreement to terminate only for cause, the trial court could have instructed the jury that if it determined that the 1998 Agreement was effective, it was not to consider evidence of an implied agreement.

[10] In part III.A.4.a., *post*, we address whether the trial court properly concluded that Stillwell was estopped as a matter of law from challenging the effectiveness of the 1998 Agreement.

[11] As noted above, the trial court denied TSA's request to instruct the jury in such a manner. (See pt. III.A.1., *ante*.) It appears that throughout the trial, the trial court believed that the jury could find both that the 1998 Agreement was effective and that there was an implied agreement

could not find TSA liable for breach of an implied agreement to terminate Stillwell's employment only for good cause if it were to find that the 1998 Agreement was effective, and had the trial court provided the jury with a verdict form consistent with this instruction, the jury's verdict as to the effectiveness of the 1998 Agreement might have been different.[12]

The fact that the jury unanimously found that Stillwell suffered damages in the amount of $155,363.38[13] suggests that the jury's verdict with respect to the effectiveness of the 1998 Agreement might have been different if the court had instructed the jury that a finding that the 1998 Agreement was effective would preclude the jury from finding that TSA breached an implied agreement. This further illustrates why it was improper for the trial court to rely on the jury's *verdict* with respect to the effectiveness of the 1998 Agreement in granting judgment in favor of TSA as *a matter of law*.

### 4. *This court may not affirm, on alternative grounds, the trial court's grant of JNOV in favor of TSA*

Notwithstanding the trial court's flawed reasoning in granting TSA's motion for JNOV, this court must consider whether we may affirm, on alternative grounds, the trial court's judgment in favor of TSA. (See, e.g., *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473] ["We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked."].) We consider two possible alternative grounds for affirming the trial court that TSA raises on appeal, and conclude that we may not affirm the judgment on either ground.

TSA first maintains that the trial court properly ruled that the 1998 Agreement was enforceable as a matter of law on the ground that Stillwell was equitably estopped from disputing its effectiveness.[14] We again assume

whose terms were contrary to those in the 1998 Agreement, and that the trial court changed its view in ruling on TSA's motion for JNOV.

[12] In fact, there is strong evidence suggesting that at one point, the jury reached a tentative verdict that the 1998 Agreement was *ineffective*. During deliberations, the jury sent the trial court several notes, including one that contained the following questions: "1-Can we answer the questions out of sequence? For example, *we are at an impasse for # 2*. Can we proceed to # 3 before answering # 2? [¶] 2-As a point of clarification to help us come to a majority answer on # 2, [i]s there any further legal clarification on what constitutes 'knowingly'?" (Italics added.) Given the structure of the verdict form, there would have been no need for the jury to deliberate on question number 2 unless it had already tentatively answered question number 1 in the negative, i.e., finding that the 1998 Agreement was *not* effective.

[13] This amount was half of the $310,726.75 in damages that Stillwell's counsel requested the jury award Stillwell during closing argument.

[14] Although TSA argues on appeal that the trial court properly submitted the question of the effectiveness of the 1998 Agreement to the jury, it also argues, apparently in the alternative,

for the sake of argument that if the 1998 Agreement is valid, there cannot be a valid implied agreement to terminate only for cause. (*Dore, supra,* 39 Cal.4th at p. 389.) Given this assumption, if we were to conclude that the trial court properly determined that the 1998 Agreement is enforceable *as a matter of law,* then TSA would be entitled to JNOV because Stillwell could not prevail on his claim of breach of an implied agreement to terminate only for cause.[15]

Second, TSA argues that irrespective of the enforceability of the 1998 Agreement, the record does not contain substantial evidence to support the jury's verdict that TSA "promised, by words or conduct, not to discharge Arthur Stillwell except for good cause."[16] To the extent that the record lacks such evidence, TSA was entitled to JNOV. (*Jones, supra,* 155 Cal.App.4th at p. 1607 [trial court may grant JNOV where record lacks substantial evidence to support the verdict].)

> a. *The trial court erred in ruling that Stillwell was estopped as a matter of law from claiming that the 1998 Agreement was not effective*

We review de novo the trial court's conclusion that the doctrine of equitable estoppel applies as a matter of law. (See *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328].)

" 'The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct.' [Citation.]" (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1567 [69 Cal.Rptr.3d 612].) In *Nicolopulos, supra,* 106 Cal.App.4th at page 311, the court outlined the elements of equitable estoppel: " ' "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." . . .' [Citation.]"

---

that the trial court properly ruled that Stillwell was estopped as a matter of law from challenging the effectiveness of the 1998 Agreement.

[15] As is reflected in the special verdict form, see part III.A.1., *ante,* Stillwell's claim of breach of implied contract and his claim of breach of the covenant of good faith and fair dealing were both premised on the theory that TSA breached an implied agreement to terminate his employment only for cause. Stillwell did not allege that TSA breached the 1998 Agreement.

[16] TSA argues in its brief, "even before considering the 1998 Agreement, [Stillwell's] evidence failed to support his claims."

TSA did not articulate in the trial court, nor did it set forth in its briefing in this court,[17] any relevant facts known by Stillwell, but not known by TSA, upon which a claim of equitable estoppel could be based. It is undisputed that TSA knew that the field secretary had not signed the 1998 Agreement. Indeed, as stated in its brief, TSA presented evidence that Robertson "followed the custom and practice of [TSA] to have the Assistant Secretary sign such agreements."

To the extent that TSA is arguing that Stillwell's "secret belief" that the 1998 Agreement was invalid constitutes a fact known by Stillwell, but not known by TSA, we reject this contention. TSA cites no authority, and we are aware of none, that would support the proposition that a party's belief about the legal validity of a contract constitutes a fact, for purposes of the doctrine of equitable estoppel. Further, with respect to TSA's argument that Stillwell could have timely raised the issue of the lack of a signature from the field secretary for personnel, Stillwell had no duty to instruct TSA concerning the manner by which TSA could manifest its assent to be bound by the terms of an agreement that TSA itself had authored and that provided a specific method by which TSA was required to manifest its assent to be bound.

Finally, even assuming that Stillwell's failure to raise the issue of the lack of the field secretary for personnel's signature on the 1998 Agreement constitutes "conduct" for purposes of the second element of the doctrine of equitable estoppel, TSA identified no evidence demonstrating, as a matter of law, that it would have cured the alleged signature defect if Stillwell had raised the issue. Thus, TSA also failed to demonstrate that it relied on Stillwell's conduct to its detriment, as is required to support the application of the doctrine.

Accordingly, the trial court erred in concluding that Stillwell was estopped as a matter of law from claiming that the 1998 Agreement was ineffective.

---

[17] In this court, TSA's sole reference to the evidence supporting the trial court's estoppel ruling is the following, "Appellant *admitted that he* signed the 1998 Agreement, outwardly assented to it, *performed according to its terms and accepted its salary and benefits for five years*." (Italics added.) Because TSA does not provide any citation to the record in support of these assertions, we are uncertain to what testimony TSA is referring. While Stillwell admitted that he signed the 1998 Agreement, he did not admit that he believed the agreement to be effective or that he performed according to its terms, as the italicized portion of this statement from TSA's brief suggests. On the contrary, the gist of Stillwell's direct examination on this point was that the 1998 Agreement was ineffective and that he performed pursuant to an implied agreement. Indeed, on cross-examination, Stillwell was asked, "[A]fter the [1998] Agreement was signed, you accepted the benefits of the agreement for the duration of the time that you held this position didn't you?" Stillwell responded, "No, that's not correct."

### b. *There is substantial evidence to support the jury's verdict that TSA promised to terminate Stillwell only for good cause*

TSA claims that there is not substantial evidence in the record to support the jury's verdict that TSA promised "not to discharge Arthur Stillwell except for good cause."

#### (i) *Governing law*

■ Labor Code section 2922 establishes a statutory presumption of at-will employment. However, an employer and an employee are free to depart from the statutory presumption and specify that the employee will be terminated only for good cause, either by an express, or an implied, contractual agreement. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 336 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).) "Generally, the existence of an implied-in-fact contract requiring good cause for termination is a question for the trier of fact . . . ." (*Kovatch v. California Casualty Management Co.* (1998) 65 Cal.App.4th 1256, 1275 [77 Cal.Rptr.2d 217] (*Kovatch*), disapproved on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ The *Guz* court stated that the existence and content of an implied agreement restricting an employer's right to terminate an at-will employee may arise from " ' "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." ' [Citation.]" (*Guz, supra,* 24 Cal.4th at pp. 336–337.) " '[T]he totality of the circumstances' must be examined to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights." (*Id.* at p. 337.)

The *Guz* court noted that an employer's personnel polices "must be a central focus of the contractual analysis." (*Guz, supra,* 24 Cal.4th at p. 345.) Further, the *Guz* court embraced cases holding that "at-will provisions in personnel handbooks, manuals, or memoranda do not bar, or necessarily overcome, other evidence of the employer's contrary intent [citations], particularly where other provisions in the employer's personnel documents themselves suggest limits on the employer's termination rights [citations]." (*Id.* at pp. 339–340.) The *Guz* court explained that while a statement in an employee handbook to the effect that the employee is an at-will employee is not "controlling," such a statement may not "be ignored in determining whether the parties' conduct was intended, and reasonably understood, to

create binding limits on an employer's statutory right to terminate the relationship at will."[18] (*Guz, supra*, 24 Cal.4th at p. 340.)

In *Guz*, the employer had promulgated a policy that provided that employees " 'have no . . . agreements guaranteeing continuous service and may be terminated at [the employer's] option.' " (*Guz, supra*, 24 Cal.4th at p. 339.) Notwithstanding this "general disclaimer" (*id.* at p. 346), the *Guz* court determined that a fact finder could rationally find that the employer had restricted its right to terminate its employees by way of personnel policies that "described detailed rules and procedures for the termination of employees under particular circumstances." (*Id.* at p. 346.)

In discussing the other types of evidence relevant to a determination of the existence of an implied employment agreement restricting an employer's termination rights, the *Guz* court stated, "Absent other evidence of the employer's intent, longevity, raises and promotions are their own rewards for the employee's continuing valued service; they do not, *in and of themselves*, additionally constitute a contractual guarantee of future employment security." (*Guz, supra*, 24 Cal.4th at p. 342.) However, "long and successful service is not necessarily irrelevant to the existence of such a contract." (*Ibid.*) "Over the period of an employee's tenure, the employer can certainly communicate, by its written and unwritten policies and practices, or by informal assurances, that seniority and longevity *do* create rights against termination at will." (*Ibid.*) As an example, the *Guz* court stated that " 'oral assurances of job security' " are relevant in determining the existence of such an implied agreement. (*Id.* at p. 343, quoting *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 681 [254 Cal.Rptr. 211, 765 P.2d 373], italics added by the *Guz* court.) Similarly, the *Guz* court noted that the employee in that case had failed to present sufficient evidence of "an *unwritten* 'polic[y] or practice[]' [citation] to release its employees only for cause," so as to support a finding of such an implied agreement. (*Guz, supra*, 24 Cal.4th at p. 345.)

### (ii) *Application*

Stillwell presented several of the types of evidence that the *Guz* court mentioned to demonstrate the existence of an implied agreement to terminate his employment only for cause. Stillwell presented considerable evidence that TSA managers had made repeated "assurances of continued employment" during Stillwell's long tenure with the organization. (*Guz, supra*, 24 Cal.4th at p. 337.) Stillwell testified that when he returned to TSA in the early 1980's

---

[18] The *Guz* court also stated, "On the other hand, most cases applying California law . . . have held that an at-will provision in an *express written agreement*, signed by the employee, *cannot* be overcome by proof of an implied contrary understanding. [Citations.]" (*Guz, supra*, 24 Cal.4th at p. 340, fn. 10.)

after having worked for another employer for a few years, he was told that he "would have a job with [TSA] as long as I chose to work for them." In outlining Stillwell's role with TSA during the early 1990's, a TSA manager wrote to Stillwell, "I am looking forward to our continued relationship and give you assurance that there is no thinking in the new plan that your relationship will change, but only that your responsibilities will increase." In 1997, Stillwell's supervisor wrote to him that TSA "look[ed] forward to many years of working together." Prior to accepting the position from which he was eventually terminated, Stillwell told Colonel Sather that he wanted to make sure that he would be able to work with TSA until he was 70. Stillwell testified that Colonel Sather responded that Stillwell "would work as long as [he] wanted to." After accepting the position, Stillwell testified that Donald Bell, his supervisor at the time, told him that "as far as he was concerned [Stillwell would] always have employment . . . ." At trial, Stillwell presented Bell's deposition testimony in which Bell admitted that he "may have" told Stillwell that "[A]s long as I'm around you'll always have a job."

Stillwell also presented evidence of his long and distinguished career with TSA. While not sufficient by itself to establish an implied agreement to terminate for cause, this evidence was relevant to the issue of whether there was an implied agreement to terminate Stillwell only for cause. (*Guz, supra*, 24 Cal.4th at p. 342.)

In addition, Stillwell presented evidence that TSA's customary practice was to terminate employees only for cause. Stillwell testified that over his long career with TSA, he had supervised many employees and had observed TSA's practice with respect to its implementation of its termination policies.[19] Stillwell explained that he had been instructed by TSA personnel that it was not proper to terminate an employee prior to giving the employee performance warnings and providing the employee an opportunity to improve his or her performance. Colonel Doug O'Brien, the divisional commander of TSA's Sierra Del Mar division, in which Stillwell was employed, agreed that the "usual practice" of TSA was "to provide warnings to employees before terminating their employment . . . ." During his deposition testimony, which was introduced in evidence at trial, O'Brien stated, "I don't think [TSA] as a norm lets people go at will."

While Stillwell received several employee handbooks during his tenure with TSA that described his employment relationship as being at will, the law is clear that such language in an employee handbook does not foreclose the possibility of an implied agreement to terminate only for cause. (*Guz, supra*, 24 Cal.4th at p. 346.) Further, those same TSA employee handbooks contained personnel policies that are arguably inconsistent with an at-will

---

[19] Stillwell testified that he supervised approximately 250 employees during the mid-1990's.

employment relationship. (*Ibid.*) For example, a 1999 employee handbook specifies a grievance procedure and contains a provision that discusses the possibility that factors beyond TSA's control may require "release . . . prior to retirement age." The handbook further provides that in such an instance, "every effort will be made to place the employee in another department . . . with release only as a last resort." Stillwell also presented evidence that TSA promulgated an employment policy regarding "termination of an exempt employee," that specified that "[d]isciplinary cases normally need three warnings showing progressive discipline with the last one stating termination will be the next consequence, unless the infraction is quite egregious. . . ."

This evidence distinguishes this case from cases such as *Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1328 [19 Cal.Rptr.3d 519] (*Carter*) and *Kovatch, supra,* 65 Cal.App.4th at page 1276, which TSA cites in support of its claim that the record lacks substantial evidence to support the jury's verdict. Unlike the evidence of numerous assurances of continued employment that TSA managers made to Stillwell, in *Carter,* the court noted, "The only evidence offered in support of an *express oral contract* was plaintiff's testimony about her 33-year-old conversation with Mr. Hirsch, who while hiring her as a 21-year-old entry level word processing operator, simply said that 'as long as [she] did a good job, [she] would get merit increases based on [her] performance.'" (*Carter, supra,* 122 Cal.App.4th at p. 1328.) In *Kovatch,* the court held that, "evidence of positive performance reviews, commendations, salary increases, and vague assurances that [the employee] would become a sales manager was not sufficient to create a triable issue of fact as to whether the parties had implicitly agreed [the employer's] right to terminate [the employee] would be limited." (*Kovatch, supra,* 65 Cal.App.4th at p. 1276.) In this case, Stillwell's positive performance reviews, commendations, and salary increases were only a portion of the evidence that Stillwell presented in support of his implied contract claim.

We conclude that the record contains substantial evidence to support the jury's verdict that TSA promised to terminate Stillwell only for cause.

B. *The case is remanded to the trial court with directions to grant TSA's motion for a new trial*

We have concluded that we must reverse the judgment in favor of TSA. (See pt. III.A., *ante.*) As noted in part III.A.1., *ante,* in granting TSA's motion for JNOV, the trial court stated that its ruling "render[ed] moot the motion[] for new trial . . . ." At oral argument in this court, Stillwell's counsel stated, "At the end of the day I think the court has to grant a new trial in the case." In light of this concession, on remand we direct the trial court to grant TSA's motion for new trial.

## IV.

## DISPOSITION

The April 12, 2007 judgment is reversed. The case is remanded to the trial court with directions to deny TSA's motion for judgment notwithstanding the verdict, to grant TSA's motion for a new trial, and to conduct any further proceedings in a manner consistent with this opinion. Each party shall bear its own costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.