Filed 4/23/26  Alphatec Spine v. NuVasive CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ALPHATEC SPINE INC., | D084368 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2017-00038583-CU-BC-CTL) |
| NUVASIVE INC., | |
| Defendant and Appellant. | |

APPEALS from an amended judgment and order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, and Jeff S. Hood for Defendant and Appellant.

Winston & Strawn, Nimalka Wickramasekera, Brian Nisbet, Libby Deshaies, Michael Meneghini, and Michael J. Woodrum for Plaintiff and Respondent.

NuVasive Inc. (NuVasive) appeals from the trial court's amended judgment and a postjudgment order denying its motion for judgment notwithstanding the verdict (JNOV).  NuVasive argues the court erred in concluding its posttrial motions for JNOV and new trial were untimely.

Additionally, it asserts the jury's special verdict finding that Alphatec Spine Inc. (Alphatec) intentionally interfered with the contractual relationship between Kenneth Kormanis, a sales representative, and inoSpine, LLC (inoSpine), an exclusive distributor of NuVasive products in North Carolina, is inconsistent with its verdict that Alphatec did *not* violate North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA) by tortiously interfering with the contracts Michael Jones and Kormanis had with inoSpine. In its view, the court should have required the jury to clarify its verdict when NuVasive raised the issue at trial. It contends the court further erred by not granting JNOV in its favor on its claim under the NCUDTPA based on the jury's finding on a separate cause of action that Alphatec tortiously interfered with Kormanis's contract.

Alphatec responds that the court's order should be affirmed because the posttrial motions were not timely filed and the court did not otherwise err.

We conclude NuVasive's posttrial motions were timely, but the verdicts were not inconsistent. We further conclude that JNOV could not lawfully be granted on the NCUDTPA claim based on the jury's verdict on the separate intentional interference claim. Accordingly, we affirm the amended judgment and order denying JNOV.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *Factual Background*

Alphatec and NuVasive are competitors in the medical device market. Both offer surgical tools and procedures used to treat spinal disease. NuVasive hires distributors and direct salespeople who exclusively represent

---

[1]    The background section is limited to only those facts relevant to the issues on appeal.

2

NuVasive and are essentially given a franchise to cover the doctors and hospitals in certain geographical areas. Because its sales representatives form relationships with surgeons in their respective territories, NuVasive's contracts with its distributors and representatives prohibit them from promoting competitors' products. The contracts also include post-termination restrictions preventing former distributors from selling competing products and soliciting former NuVasive customers.

Kormanis and Jones worked as sales representatives for inoSpine, an exclusive distributor of NuVasive products in North Carolina. Each entered into agreements with inoSpine, governed by North Carolina law, with NuVasive as a third-party beneficiary. Kormanis worked with Dr. Benjamin Ditty, among others, and Jones provided products and guidance to Dr. William Hunter.

Patrick Miles had served as NuVasive's president, chief operating officer, and vice chairman until becoming Alphatec's executive chairman in 2017. That same year, Greg Rhinehart, Alphatec's vice president of sales for the eastern United States, contacted Kormanis and Jones and recruited them to join Alphatec. After Kormanis received his Alphatec contract but while he was still working for inoSpine, Rhinehart asked Kormanis to provide Dr. Ditty's contact information, noting that Dr. Ditty would be meeting Miles, Alphatec's then-executive chairman. Kormanis obliged and also shared sales revenue data from Dr. Ditty's surgeries.

After Kormanis and Jones started at Alphatec in March 2018, Alphatec swapped their NuVasive territories. Dr. Ditty began transitioning his cases over to Alphatec the same month. He confirmed that he stopped using NuVasive products because Kormanis would no longer be providing coverage for NuVasive cases.

3

NuVasive also presented evidence of alleged interference with its relationships with 11 other physicians in several other states.

B.   *Procedural Background*

Alphatec and Miles filed a complaint against NuVasive in the San Diego Superior Court.  NuVasive then filed this lawsuit against Alphatec.  Its first amended complaint alleged causes of action for (1) unfair competition; (2) intentional interference with contractual relations with distributors in multiple states, including distributors in Florida and North Carolina that collectively serviced nine physicians[2]; (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; (5) Deceptive and Unfair Trade Practices (Fla. Stat. § 501.201 et seq.); and (6) Deceptive and Unfair Trade Practices (N.C. Gen. Stat. § 75.1.1).  Alphatec and Miles's lawsuit was ultimately dismissed, and only NuVasive's lawsuit against Alphatec proceeded to trial.

At the conclusion of the 10-week trial, NuVasive asked the jury to award it a total of $32 million dollars in damages for all its claims.   The jury returned the special verdict after deliberating for a little over two days. Noting that the jury had written "Not applicable" (NA) instead of checking "Yes" or "No" in certain places, the court sent the jury back out with a new verdict form and instructions to "get rid of the NAs."

When the jury returned with a revised special verdict, the court read it aloud.  On the intentional interference with contractual relations claim, the jury concluded Alphatec's conduct was only a substantial factor in causing

---

[2]   At trial, NuVasive also claimed interference with a Massachusetts distributor that provided NuVasive products and services to three additional physicians.

4

harm to NuVasive as to Dr. Ditty. It found NuVasive's damages to be $812,002 as to Dr. Ditty. It did not award damages as to any of the other 11 physicians. Likewise, on the intentional interference with prospective economic advantage claim, the jury concluded Alphatec only engaged in wrongful conduct as to Kormanis. It found no wrongful conduct as to the Florida or Massachusetts distributors or as to Jones in North Carolina. And, although it found the intentional interference with prospective economic advantage affecting Kormanis was a substantial factor in causing harm to NuVasive via Dr. Ditty, it did not award any damages on this claim.[3] Finally, the jury rejected the claims that Alphatec violated the Florida Deceptive and Unfair Trade Practices Act and the NCUDTPA and concluded punitive damages were not warranted.

NuVasive then asked that the jury be polled. On Special Verdict Form Question No. 6,[4] the vote on damages for the intentional interference with

---

[3]  The court acknowledged in its posttrial order that there was no rational basis for the jury to award $0 in damages for the intentional interference with prospective economic advantage claim, but noted the jury was instructed that damages for lost profits could be recovered only once under all the legal theories. It concluded, "[NuVasive] does not claim, nor demonstrate, that the jury found [NuVasive] suffered more lost profits under the [intentional interference with prospective economic advantage] claim than under the [intentional interference with contractual relations] claim. Therefore, Plaintiff has not demonstrated the jury's purportedly inconsistent finding 'materially affect[ed] the substantial rights' of [NuVasive]. (Code Civ. Proc., § 663.) If the jury had awarded $812,000 in damages in both the [intentional interference with prospective economic advantage] and [intentional interference with contractual relations] claims, the Court could have and would have corrected the verdict to prevent a double recovery." NuVasive does not challenge this ruling on appeal.

[4]  Future references to "Question No." will refer to questions on the special verdict form.

5

contractual relations claim related to Dr. Ditty was initially 8 to 4. Counsel conferred with the court as to whether they could just send the jury back in to deliberate further on that one question or whether the jury had to answer all the questions after that one again. While they were discussing the matter, the jury sent a note explaining there had been a misunderstanding and the vote was 9 to 3. There was no further discussion of the issue.

The court entered an amended judgment on February 20, 2024, and Alphatec served a notice of entry of judgment on March 29, 2024. NuVasive filed a timely appeal from the amended judgment.

On April 12, 2024, NuVasive filed a notice of intent to move for new trial, vacate the judgment, and move for JNOV. Following briefing and a hearing, the court summarily denied NuVasive's motion for a new trial. It further concluded that NuVasive's JNOV motion was untimely. Relying on *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1277 (*Palmer*), which held that no particular form of notice is required under Code of Civil Procedure,[5] section 659 and that service of a copy of the judgment suffices as notice, the court determined that Alphatec's service of the amended judgment on March 8, 2024, as an exhibit to its motion for costs, was sufficient to trigger the 15-day deadline for filing notice of intent to file new trial and JNOV motions.

The court nonetheless denied the motion for JNOV on the merits. Relevant here, NuVasive had argued the jury's defense verdict on its claim under the NCUDTPA was unsupported because the jury's finding that Alphatec intentionally interfered with NuVasive's contractual relationship

---

[5]     Statutory references are to the Code of Civil Procedure unless otherwise specified.

with Kormanis compelled a finding that Alphatec violated the NCUDTPA. In its words, "[a]s a matter of law, intentional interference is *ipso facto* a violation of [the] NCUDTPA. And, this Court so instructed the jury." The court disagreed that the jury's findings were inconsistent. Given that the NCUDTPA instruction given to the jury required "tortious interference with inoSpine, LLC's contracts with Michael Jones **_and_** Kenneth Kormanis during their employment," and the jury found intentional interference only as to Kormanis, the court determined the jury could have concluded that NuVasive did not prove a violation of the NCUDTPA under the instructions. It also rejected NuVasive's argument that the jury should have interpreted the word "and" in the phrase "Michael Jones and Kenneth Kormanis" to mean "or."

NuVasive filed another appeal from the order denying its motion for JNOV. We docketed both appeals under the same case number.

DISCUSSION

A.     *NuVasive's JNOV Motion was Timely*

Alphatec argues the trial court properly concluded NuVasive's JNOV motion was untimely, and that we may affirm the trial court's denial on this basis alone. We disagree that the motion was untimely.

A party must move for JNOV within the time for filing and serving notice of its intention to move for a new trial. (§ 629, subd. (b).) Such notice must be filed "[w]ithin 15 days of the date of serving notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon them by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest." (§ 659, subd. (a)(2).) The superior court's power to rule on the motion "expire[s] 75 days after the mailing of notice of entry of judgment by the clerk . . . or 75 days after service on the moving party by any party of written notice of entry of judgment,

7

whichever is earlier, or if that notice has not been given, 75 days after the filing of the first notice of intention to move for a new trial." (§ 660, subd. (c); see also *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 66 (*Van Beurden*) [the time limit for ruling under section 660 is jurisdictional].)

Alphatec served a file-stamped copy of the amended judgment on March 8, 2024, but it was included only as exhibit C of the declaration accompanying its motion for costs. The proof of service did not list the amended judgment. In Alphatec's view, this triggered the 15-day clock for NuVasive's JNOV motion. The court agreed. NuVasive meanwhile argues the 15-day period did not begin to run until Alphatec served a standalone notice of entry of judgment on March 29, 2024.

We agree with NuVasive. Our high court construed section 659 in *Palmer, supra*, 30 Cal.4th 1265. It concluded the "written notice" served on the party moving for a new trial by another party "need not . . . be a separate document entitled 'notice of entry of judgment.'" (*Palmer,* at p. 1277.) "[N]o particular form of notice is required, and . . . a file-stamped copy of the judgment suffices as 'written notice.'" (*Ibid.*) But the court also noted that "[a]t oral argument, counsel for GTE expressed concern that, unless required to serve a separate document entitled 'notice of entry of judgment,' an attorney might bury such notice in a 'chatty ten-page letter.'" (*Id.* at p. 1279, fn. 7.) The court's response was that "[o]f course, any deliberate attempt to deceive or mislead opposing counsel would be a serious breach of counsel's professional responsibilities and grounds for discipline. More to the point, our decision today makes it perfectly clear that any attorney who receives in the mail a file-stamped copy of a judgment, accompanied by proof of service,

8

will understand that this constitutes service of notice of entry of judgment sufficient to trigger the deadlines for posttrial motions." (*Ibid.*)

Although we do not suggest Alphatec deliberately intended to deceive NuVasive, the judgment here was buried as just one exhibit in a nearly 60-page costs motion in similar fashion to the hypothetical chatty ten-page letter in *Palmer*. Under these circumstances, it is not apparent that an attorney receiving a judgment attached to an unrelated motion and accompanied by proof of service listing only the motion would understand it constituted sufficient service to trigger jurisdictional deadlines for postjudgment motions. Although the *Palmer* court did not expressly state that the proof of service should list the judgment by title, it certainly was implied. The high court's interpretation of the statute does not support imposing a requirement that counsel immediately review every page of unrelated documents and exhibits the minute they are received just in case a file-stamped judgment is included somewhere in the pile.

We are aware of no cases condoning such obscured service under section 659, and Alphatec has not directed us to any. Having reviewed published authority where the court found the written notice of the court's entry of judgment adequate, we observe that all the cases appear to involve separate service of the conformed judgment under circumstances providing straightforward notice. (See, e.g., *Dodge v. Superior Court* (2000) 77 Cal.App.4th 513, 518–519 [personal service with a conformed copy of the judgment]; *Ramirez v. Moran* (1988) 201 Cal.App.3d 431, 436 [conformed copy of the judgment mailed without proof of service but with a cover letter stating that a conformed copy of the judgment was enclosed along with counsel's declaration of the same]; *National Advertising Co. v. City of Rohnert Park* (1984) 160 Cal.App.3d 614, 616, 618 [endorsed copies of the judgment

9

personally served and proofs of that service filed with the trial court];
*Tri-County Elevator Co. v. Superior Court* (1982) 135 Cal.App.3d 271, 276
[conformed copy of the judgment mailed, with no indication anything else
accompanied it].) Furthermore, the plain language of section 659 and our
high court's interpretation of the same indicate that the purpose of the
statute is to ensure parties receive clear notice of the entry of judgment.
Alphatec's inclusion of the judgment in the middle of the exhibits to an
unrelated motion, with no indication of its presence apparent from the proof
of service or any accompanying letter, did not satisfy this purpose.

We are not prepared to set the precedent that such ambiguous service
satisfies section 659 and thereby risk encouraging gamesmanship involving a
jurisdictional requirement. The Supreme Court has repeatedly stressed that
the triggering events should be clear and "[n]either parties nor appellate
courts should be required to speculate about jurisdictional time limits."
(*Van Beurden, supra*, 15 Cal.4th at p. 64 [addressing service related to JNOV
and new trial motions]; see also *Alan v. American Honda Motor Co., Inc.*
(2007) 40 Cal.4th 894, 905 [quoting *Van Beurden* in interpreting timeliness of
appeals under California Rules of Court, rule 8.104(a)(1)]; *Maroney v.
Iacobsohn* (2015) 237 Cal.App.4th 473, 484 [observing that, "as *Van Beurden*
also demonstrates, this modern view eschews jurisdictional forfeitures, even
where, as a practical matter, the party moving for new trial indisputably had
notice of entry of judgment"].)

Accordingly, we conclude the 15-day clock for NuVasive to file its JNOV
and new trial motions did not run from March 8, but rather from Alphatec's
March 29 notice of entry. As a result, NuVasive's April 12 notice was timely.

10

B.    *The Verdicts Were Not Facially Inconsistent*

NuVasive contends the jury's verdicts on the intentional interference with contract claim as to Kormanis and the claim for violation of the NCUDTPA were facially inconsistent and that the court erred in declining to have the jury clarify its verdict and in denying NuVasive's motions for JNOV and new trial on this ground. We disagree.

"A special verdict is inconsistent if there is no possibility of reconciling its findings with each other." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357 (*Singh*).) When a verdict appears inconsistent and the adversely affected party requests clarification, section 619 authorizes the court to send the jury out again to resolve the inconsistency.[6] (*Singh,* at p. 357; see also § 619; *Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 302 (*Mendoza*) ["section 619 applies to an inconsistent verdict"].) "If no party requests clarification or an inconsistency remains after the jury returns, the trial court must interpret the verdict in light of the jury instructions and the evidence and attempt to resolve any inconsistency." (*Singh,* at p. 358.)

A claim of inconsistent verdicts may be asserted in a motion for new trial but is not a proper basis for JNOV. " 'The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence.' " (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682.) When the inconsistency is between answers within a special verdict, both are equally against the law. (*Ibid.*) As NuVasive concedes in its

---

6    Section 619 provides that "[w]hen the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out."

11

opening brief, "[t]he appellate court is not permitted to choose between inconsistent answers." (*Ibid.*) Rather, "the proper remedy is a new trial." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344.) Thus, even if the trial court here had found the two verdicts truly were inconsistent, the only appropriate remedy would have been to grant a new trial, not JNOV.

We ordinarily review the denial of a motion for a new trial for abuse of discretion, but we review a special verdict de novo to determine whether its findings are inconsistent. (*King v. State of California* (2015) 242 Cal.App.4th 265, 296.) "A court reviewing a special verdict does not infer findings in favor of the prevailing party [citation], and there is no presumption in favor of upholding a special verdict when the inconsistency is between two questions in a special verdict." (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.)

Here, the parties do not dispute that the jury's findings on Question Nos. 1 through 6 established that Alphatec intentionally interfered with the contractual relationship between inoSpine and Kormanis benefiting NuVasive in North Carolina. The jury did not, however, find that Alphatec intentionally interfered with inoSpine's contractual relationship with Jones. On Question No. 5, the jury concluded Alphatec's conduct was not a substantial factor in causing harm to NuVasive as to Dr. Hunter, who was serviced by Jones, and in Question No. 6, the jury found NuVasive did not suffer any damages related to Dr. Hunter.

NuVasive contends the jury's finding that Alphatec tortiously interfered with its relationship with Kormanis is facially inconsistent with its verdict on Question No. 17 relating to the NCUDTPA claim. This question covered the first element of a violation of the NCUDTPA, asking, "Did defendant Alphatec commit an unfair or deceptive trade act or practice

12

within the State of North Carolina by (i) tortiously interfering with inoSpine, LLC's *contracts* with Michael Jones *and* Kenneth Kormanis during their employment (see Instruction 2201); or (ii) aiding and abetting Mr. Miles in a breach of his fiduciary duty (see Instructions 3610 and 4102)?" (Italics added.) The jury responded, "No."

As the trial court found, these jury findings are consistent and easily reconciled. Both Question No. 17 and the special jury instruction given on the NCUDTPA[7] required a finding that Alphatec tortiously interfered with inoSpine, LLC's *contracts* with Jones *and* Kormanis, not just the contract involving one or the other. Because the jury did not find that Alphatec interfered with both contracts, its verdicts on the intentional interference and NCUDTPA claims were consistent.

NuVasive highlights that Question No. 17 directed the jury to Instruction No. 2201. In its view, this instruction emphasized that claims should be considered separately for each individual or entity involved. Instruction No. 2201 did, in fact, require the jury to determine that NuVasive had proved all the elements of *intentional interference with contractual relations* "for each entity or individual." The jury followed this instruction, finding NuVasive had met its burden as to Kormanis but not as to Jones. But Instruction No. 2201 did not require such individual findings as to Question No. 17, which addressed the first element of the NCUDTPA and, as

---

7 The instruction read: "For NuVasive's claim under the North Carolina Unfair and Deceptive Practices Act, the act alleged by NuVasive is unfair and deceptive if NuVasive establishes all of the elements of (i) tortious interference with inoSpine, LLC's contracts with Michael Jones and Kenneth Kormanis during their employment (see Instruction 2201); or (ii) aiding and abetting Mr. Miles in a breach of his fiduciary duty (see Instructions 3610 and 4102)."

drafted, required a finding of tortious interference with *both* Jones's and Kormanis's contracts. The evidence indicates the jury in fact read the instructions and questions carefully and applied them as written.[8]

NuVasive also argues it is well-established that the terms "and" and "or" may be interpreted as interchangeable. As confirmed by the case it relies upon, this principle is sometimes applied under contract law " 'when necessary to effect the apparent meaning of the parties.' " (*Universal Sales Corp. v. California Press Mfg. Co.* (1942) 20 Cal.2d 751, 775–776.) The word "and" can sometimes mean "or" in a statute as well. (*People v. Reynoza* (2024) 15 Cal.5th 982, 991.) But NuVasive provides no authority suggesting this principle also applies to jury instructions. Long ago, our high court confirmed that "[t]he rule is settled that instructions are to be considered as a whole and the words used therein considered in their ordinary meanings." (*Giles v. Happely* (1954) 123 Cal.App.2d 894, 897.) "The ordinary and usual usage of 'and' is as a conjunctive, meaning ' "an additional thing," ' 'also' or 'plus.' " (See *In re C.H.* (2011) 53 Cal.4th 94, 101.) The jury had no reason to believe the word "and" meant "or" in this context. Absent instruction to the

---

8      Question No. 9, which related to NuVasive's claim for intentional interference with prospective economic relations and correlated to Instruction No. 2202, also implied that intentional interference with contractual relations and violation of the NCUDTPA were different things with different requirements. As Instruction No. 2202 explained, to establish the claim, NuVasive had to prove, among other things, that Alphatec engaged in any of four listed types of conduct. Intentional interference with NuVasive's contractual relations and violation of the NCUDTPA were listed as two of the options. The jury could have reasonably assumed these items would not have been listed separately if intentional interference was subsumed within a violation of the NCUDTPA in all cases. Thus, Question No. 9 and Instruction No. 2202 support the jury's and court's reading of Question No. 17 as requiring something more—such as a finding of intentional interference as to two people—to justify finding a violation of the NCUDTPA.

14

contrary, the jury and the trial court reasonably interpreted "and" to mean that Alphatec had to interfere with both contracts. (See *Singh, supra*, 186 Cal.App.4th at p. 358 [when determining whether verdicts are inconsistent, the trial court interprets them within the framework of the jury instructions and evidence presented at trial].)

Notably, NuVasive has not challenged the jury instruction requiring a finding of intentional interference with *both* contracts to establish a violation of the NCUDTPA. Viewing the jury's verdict within the framework of the jury instructions given and not contested on appeal, there was no ambiguity or inconsistency suggesting the court should have returned the matter to the jury for clarification. "[C]ourts are given wide latitude in deciding whether a verdict is ambiguous or inconsistent so as to come within section 619." (*Mendoza, supra*, 81 Cal.App.4th at p. 302.) Although the court *may* send the jury out with correct instructions " ' "if the trial judge *has any doubts on the subject*" ' " (*ibid.*), given that the two instructions could be reconciled using the ordinary meaning of "and," the trial judge reasonably may not have had any doubts. Moreover, "it is appropriate for trial courts to reinstruct the jury in an objective, neutral, and noncoercive manner if a jury's simple misunderstanding as to the verdict forms, or a clerical error, can be corrected." (*Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1072.) But in directing the jury to deliberate further, the court "may not throw [its] weight of influence 'into the deliberations of the jury as to matters exclusively within its province.' " (*Id.* at pp. 1070–1071.) In this case, NuVasive did not ask the court to instruct the jury that the word "and" meant "or," nor did it assert at any time before the jury was excused that intentional interference with a single North Carolina contract established a violation of the

15

NCUDTPA as a matter of law.[9]  In these circumstances, the trial court did not abuse its discretion in declining to instruct the jury to clarify its verdicts and did not commit any error in denying NuVasive's motion for new trial or JNOV based on allegedly inconsistent verdicts.

C.    *The Court Cannot Grant JNOV on One Cause of Action Based on the Jury's Verdict on Another*

---

[9]    NuVasive repeatedly claims that it immediately raised the inconsistency between the jury's verdicts before the jury was discharged and implies the issue raised was the inconsistency between the jury's intentional interference with contract claim and Question No. 17 regarding the NCUDTPA.  The record does not reflect this assertion.  The court had been discussing whether the jury should just be asked to deliberate further as to Question No. 6 to achieve at least nine votes on the damages amount related to Dr. Ditty, or whether the court must allow the jury to complete the remainder of the verdict form again.  NuVasive's counsel explained that "[t]here's a jury instruction that says you can't order the same damages twice, and they have for the same action, they put $0 for Dr. Ditty later.  And what we're trying to determine is, did they award 0 because they already awarded it in accordance with the jury instruction?  Or are they independently finding 0 for that cause of action?  That would not make any sense."  The only other place on the verdict form where the jury awarded $0 related to Dr. Ditty was on Question No. 13, which related to NuVasive's claim for intentional interference with prospective economic advantage, not its claim under the NCUDTPA.  Alphatec responded that Question No. 6 was a standalone question and no other questions on the verdict form depended upon it.  As a result, it argued NuVasive was raising an appellate issue as to any inconsistency between Question Nos. 6 and 13.  NuVasive responded: "Again, I don't know how to address the internal inconsistency.  Dr. Ditty's damages were never reached in the North Carolina unfair and deceptive trade practices act because of that issue, but it has a cascading effect."  Read within this context, NuVasive's counsel's concern related to the jury instruction about not awarding damages more than once, not to whether only one finding of intentional interference with contractual relations established as a matter of law that Alphatec committed an unfair or deceptive trade practice under the NCUDTPA.

16

NuVasive further argues the trial court should have determined that the NCUDTPA had been violated as a matter of law. Citing to *Ellis v. Northern Star Co.* (N.C. 1990) 326 N.C. 219, 226 and *Dalton v. Camp* (N.C. 2001) 353 N.C. 647, 656, NuVasive submits that "[t]he determination of whether an act or practice is an unfair or deceptive practice that violates the [NCUDTPA] is a question of law for the court, not the jury." It argues the trial court should have found as a matter of law during the JNOV proceedings that Alphatec's actions constituted an unfair and deceptive practice under the NCUDTPA because: (1) North Carolina courts have consistently recognized that tortious interference with a contract constitutes a violation of the NCUDTPA; and (2) the jury's finding on the separate intentional interference claim that Alphatec tortiously interfered with Kormanis's contract therefore compels a finding that Alphatec's actions were also unfair and deceptive practices under the NCUDTPA.

We reject this contention because JNOV may not be granted on one cause of action based on the jury's verdict on another. (*Stillwell v. The Salvation Army* (2008) 167 Cal.App.4th 360, 375 (*Stillwell*).) JNOV may be granted only when "a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." (§ 629, subd. (a).) A motion for directed verdict is ordinarily made "after all parties have completed the presentation of all of their evidence in a trial by jury" (§ 630, subd. (a)) but may in the court's discretion "be made *at any time* before the case is submitted to the jury." (*Gibson v. Southern Pacific Co.* (1955) 137 Cal.App.2d 337, 346, italics added.) Because a motion for directed verdict is made and decided *before* the case is submitted to the jury, it cannot be granted on one cause of action based on the jury's verdict on another. Rather, a directed verdict may be granted only based on the lack of

17

substantial evidence in the record to support a claim or defense. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1154.)

Since the standards applicable to directed verdict and JNOV " 'are analytically the same and governed by the same rules' " (*Acosta v. MAS Realty, LLC* (2023) 96 Cal.App.5th 635, 664), JNOV also cannot be granted on one cause of action based on the jury's verdict on another. "In other words, a judgment *notwithstanding* the verdict, which a trial court may grant only where a directed verdict would have been properly granted, cannot be dependent on another of the jury's verdicts in the case." (*Stillwell, supra*, 167 Cal.App.4th at p. 375; see also *Missakian v. Amusement Industry, Inc.* (2021) 69 Cal.App.5th 630, 661 [concluding that trial court erred by crediting the jury's finding as to one defendant and then relying on that aspect of the verdict to grant JNOV in favor of another defendant].)

NuVasive's argument for JNOV on the NCUDTPA cause of action is based solely on the jury's verdict on the separate cause of action for intentional interference with contractual relations. Apart from this theory, NuVasive does not contend that the evidence was legally insufficient to support a defense verdict on the NCUDTPA claim. Because NuVasive's sole argument on appeal is not a proper legal basis for JNOV as a matter of law (*Stillwell, supra*, 167 Cal.App.4th at p. 375), we reject it.

## DISPOSITION

The amended judgment and order denying JNOV are affirmed. Alphatec is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

18

                                                                    BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.